ARTHUR CANTRELL, Plaintiff in Error, v. STATE OF TENNESSEE, Defendant in Error.

463 S.W.2d 145.

Court of Criminal Appeals of Tennessee. Nov. 21, 1970.

Certiorari Denied by Supreme Court Feb. 1, 1971.

Donald R. Coffey, Frederick D. McDonald, Knoxville, for plaintiff in error.

David M. Pack, Atty. Gen., Lance D. Evans, Asst. Atty. Gen., Nashville, Zane Daniel, Asst. Dist. Atty. Gen., Powell, for defendant in error.

## OPINION

GALBREATH, Judge.

Plaintiff in error appeals from the verdict of the jury and the judgment of the Criminal Court of Knox County declaring him guilty of armed robbery and fixing punishment at fifteen (15) years in the penitentiary.

Assignments of error allege that: (1) the evidence does not support the verdict; (2) improper evidence of identification at a line-up was admitted; (3) improper and inflammatory references to prior convictions of the defendant were made by the Assistant Attorney General during argument on the question of the sentence to be imposed; and (4) the judge erroneously instructed the jury as to the presumption resulting from the failure of a party to offer an available witness.

We affirm the judgment of the trial court.

Although the trial judge, after a full investigation out of the presence of the jury, found that all of the defendant's rights as delineated in the line-up cases of United States v. Wade, 388 U.S. 218, 87 S.Ct. 1926, 18 L.Ed.

2d 1149, and Gilbert v. California, 388 U.S. 263, 87 S.Ct. 1951, 18 L.Ed.2d 1178, were explained and that the defendant executed a written waiver, it is abundantly clear that the victim and principal witness for the State, Mrs. Anna Rose Stansbury, did not rely on her identification at the line-up conducted by the police at the Knoxville jail the day following the robbery for her in-court identification of the defendant as the man who held a knife to her throat while robbing the small neighborhood grocery store in which she worked of some $200.00 and some cigarettes. Mrs. Stansbury had waited on the defendant twice the day before the robbery and once the day of the robbery and, from these prior observations, recognized him when he forced her and another lady who was present in the store to lie down on the floor while he went behind the counter and took the money she estimated to be in the amount of $200.00. This testimony of the victim, corroborated in part by the defendant's girl friend who waited for him in a car parked outside the grocery while he was inside for what she thought was the purpose only of purchasing some food, including some cans of Game Cock sardines Mrs. Stansbury had sold him and with which he returned to the automobile, more than amply supports the verdict of the jury. The defendant denied the crime and sought to establish an alibi. The issue thus raised was for resolution by the jury, and their findings on such conflicting testimony may only be disturbed on appellate review if the evidence preponderates against the verdict. See McBee v. State, 213 Tenn. 15, 372 S.W.2d 173.

While testifying on his own behalf, the defendant went into some detail concerning a number of crimes for

which he had in the past been convicted, including robbery, burglary, forgery and receiving stolen property. Undoubtedly this was calculated to soften the impact of anticipated cross examination on these matters. There is no doubt that such information concerning the background of a person being tried for a crime, whether volunteered as in this case or brought out on cross examination, is quite damaging to the defense. Although the legal theory is that such information is admissible only for impeachment purposes, all those familiar with the trial of criminal cases including our Supreme Court (see Waldie v. State, 190 Tenn. 537, 230 S.W.2d 993) recognize the dilemma faced by a defendant who must choose between not becoming a witness and risking the natural inference that arises when one stands mute in the face of accusation or going on the stand to present his explanation of the controversy in an effort to establish innocence and revealing that he has been adjudicated a criminal in prior legal proceedings. Such information is, in spite of the obvious detriment, admissible under instructions that it may not be considered as evidence of guilt. Such instruction was given in this case.

█ During his argument, the Assistant Attorney General made elaborate reference to the criminal record the defendant himself had placed in evidence. After detailing the crimes the defendant had testified about, counsel for the State said:

"* * * I say the day has come, the time has come not only here but everywhere in Knox County, that if we don't do something with these kind of people, you might as well just open up the whole top stairs and just say, 'Run on out, boys, where you want to', when

you get a person in here with this type of record—a person that's been given a break by his own testimony, he was put on parole, he went to the penitentiary and stayed fourteen months on a robbery case, and they turned him out. He had a parole, somebody gave him a break down there at Nashville, so he could get out and straighten up and make something out of himself. What did he choose to do? Come back and rob this poor woman and take money off of her at knife point while she was trying to make a living. I say this in all sincerity, this is about as strong a case of armed robbery as it can be, and if you don't grab the bull by the horns, if you don't do something about it, if you don't say to this defendant and other people that we, the citizens of Knox County, don't appreciate this type of thing and we are going to do something about it, then you just might as well * * *

"MR. COFFEY: May it please the Court, I'm going to object to that line of argument to the jury.

"THE COURT: I sustain the objection. The jury won't consider that last part of the Attorney General's argument about being a serious armed robbery case and so forth. Stay within the evidence, General. The jury won't consider that part of the argument."

Why attorney for the defendant did not object sooner is not apparent. The trial judge very properly and promptly sustained the objection when it was belatedly made and admonished the jury to disregard the argument objected to, and later in his charge further instructed them that the evidence of prior crime could only be considered as going to the credibility of the defendant

as a witness. The objectionable argument suggested propensity rather than urged harsh punishment. Actually, we are confronted with what amounts to no objection at all to the argument pertaining to the defendant's criminal record since it had been thoroughly commented upon for purposes apparently other than impeachment long before counsel interposed his objection. Our Supreme Court has repeatedly held, as did this Court recently in Rivera v. State, Tenn.Cr.App., 443 S.W.2d 675:

> " 'In the case of Turner v. State, 188 Tenn. 312, at page 324, 219 S.W.2d 188, the Court quoted with approval the following:
>
>> " ' "It is thoroughly settled, under our practice, that objectionable argument or improper remarks of counsel afford no ground for a new trial, where no objection is made or exception taken at the time of the argument. Smith v. State, 90 Tenn. 575, 18 S.W. 248; King v. State, 91 Tenn. 617, 20 S.W. 169; Morgan v. Duffey, 94 Tenn. 686, 30 S.W. 735; Ferguson v. Moore, 98 Tenn. 342, 39 S.W. 341." Sherman v. State, 125 Tenn. 19, 47, 140 S.W. 209, 216.' "

The fact that Judge Duncan sustained the objection when he did indicates strongly that he would have done so earlier if it had been made. For an objection to be effective it must be timely. Once the objectionable argument is made without protest there is very little the trial judge can do except instruct the jury to disregard it as Judge Duncan did in this case. Any error involved here was rendered harmless by acquiescence on behalf of the defendant and curation by the court. Also, the verdict

of the jury fixed punishment at less than the maximum allowed by law and thus cannot be said to be a result of passion and caprice.

The defendant introduced proof to the effect that another person in the neighborhood of the crime bore certain resemblances to him and that the victim may have been erroneous in her identification of him as the robber. The defendant had a gray spot on the back of his head, and Mrs. Stansbury mentioned this in her description of the defendant as the one who robbed her. According to the defendant, a person by the name of Scott had this type of gray spot on his head also, and it is the theory of the defense that the trial judge's instruction to the effect that the failure to call a witness available to a party raises a presumption that his or her testimony would have been unfavorable to the side that should have called or produced such a witness shifted the burden of proof of the fact sought to be established in the defendant's theory to him. We find the statement of law charged by the trial judge to be correct and justified under the proof before the jury. It was encumbent upon the defendant, if he sought to prove someone else committed the crime, to bring in whatever witnesses he might have to support his position. There is no suggestion that the State suppressed or withheld any evidence favorable to the defendant.

The judgment of the trial court is affirmed.

RUSSELL and MITCHELL, JJ., concur.