Jimmy MEADE, Plaintiff in Error,

v.

**STATE of Tennessee, Defendant in Error.**

Court of Criminal Appeals of Tennessee.

June 10, 1975.

Certiorari Denied by Supreme Court
Sept. 8, 1975.

Wade M. Boswell and Randall E. Nichols,
Knoxville, for plaintiff in error.

R. A. Ashley, Jr., Atty. Gen., Tom Jennings, Asst. Atty. Gen., Nashville, Ronald

A. Webster, Dist. Atty. Gen., Knoxville, for defendant in error.

## OPINION

OLIVER, Judge.

Represented by appointed counsel, Meade is in this Court by appeal in the nature of a writ of error contesting his conviction of receiving stolen property under the value of $100 (TCA § 39–4218) and resulting sentence of 18 months to five years. The minimum sentence of 18 months was set by the jury, in accordance with TCA § 40–2707, at a longer period than the statutory minimum of one year. This action is uncontested by the defendant.

As the defendant has challenged the sufficiency of the evidence, we summarize the pertinent evidence adduced at the trial.

Between 6:00 and 7:00 a. m. on November 25, 1973, the front display window of Martin's Shoe Store on the Market Square Mall in Knoxville, Knox County, was broken and nine pairs of men's shoes were removed therefrom.

Two Knoxville Police Department officers patrolling in the area of the Mall about 5:00 o'clock that morning saw the defendant and one James Turnbill, a co-defendant tried separately (whom both officers knew), sitting under a canopy on the Mall some 15 to 20 yards from the front of the Martin store. The officers parked at a vantage point and watched the pair until shortly before 6:00 a. m. when they were scheduled to go off duty and then drove through the Mall and checked the doors and glass of the stores and found all secure.

On December 8, 1973, the investigating officers went to the apartment of Katheleen Breeden, the woman with whom the defendant lived, to look for him. Miss Breeden and one of the officers were acquainted and she admitted them to the apartment. The defendant was not there, but the officers saw on the floor of the living room a pair of shoes matching the description of one of the pairs stolen from the store. Miss Breeden told the officers that the shoes were the defendant's, but she did not tell them how he had obtained them.

The owner of the shoe store testified that his was the only store in Knoxville selling this particular style of shoe and that he had not sold any of them prior to the date that the pair was discovered in the Breeden apartment, which he identified as his. He also testified that of the nine pairs stolen from the store display window, four pairs were recovered almost immediately from an alley behind the store and that the other five pairs (including those found in the Breeden apartment) were worth $120, i. e. $24 per pair. Another pair of the stolen shoes was found being worn by the co-defendant Turnbill.

There was testimony that the defendant had been seen, subsequent to the theft, wearing the pair of shoes found in the Breeden apartment.

The defendant did not testify but did present Katheleen Breeden as a witness.

Miss Breeden testified that the morning in question the defendant had been out drinking and came to the apartment around 3:30; that he stayed at the apartment about an hour and then left (around 4:30 a. m.) in order to get another drink; that around 5:30 a. m. she went looking for him and found him talking to Turnbill in front of the Golden Sun Restaurant on the Mall; that they then returned to the apartment together and went to sleep. She further testified that around 8:30 that morning, while the defendant was still asleep, Turnbill came by the apartment and offered to sell her a new pair of men's shoes for $5.00 and that she bought them; that Turnbill did not say where he had gotten the shoes and that she did not ask him; and that they were the same pair that the police seized at her apartment. She testified she gave the shoes to the defendant as a present when he awoke that afternoon and told him where she got them and how much she had paid for them.

■ The elements of receiving stolen goods, as stated many times by the appellate courts of this State, are: (1) fraudulently receiving, (2) goods feloniously taken or stolen from another, (3) knowing such goods to have been so obtained, (4) with intent to deprive the owner thereof. *Bennett v. State,* 1 Tenn.Cr.App. 241, 435 S.W.2d 842 and cases therein cited; *Daniel v. State,* 489 S.W.2d 852 (Tenn.Cr.App. 1972); *Jones v. State,* 219 Tenn. 228, 409 S.W.2d 169; *Taylor v. State,* 493 S.W.2d 477 (Tenn.Cr.App.1972).

■ This State has adopted the objective test rule to determine the guilty knowledge of the defendant. In *Tackett v. State,* 223 Tenn. 176, 443 S.W.2d 450 the Court said:

". . . In *Kessler* [*Kessler v. State,* 220 Tenn. 82, 414 S.W.2d 115], we restated the objective test rule as to guilty knowledge of the theft, first adopted in this state in *Wright v. State,* 13 Tenn. 154, restating it in accordance with Wharton's Criminal Law and Procedure:

'That is, the existence of guilty knowledge is to be regarded as established when the circumstances surrounding the receipt of the property were such as would charge a reasonable man with notice or knowledge or would put a reasonable man upon inquiry which if pursued would disclose that conclusion.' Wharton's Criminal Law & Procedure, Anderson, Vol. 2, p. 281, § 568."

See also: *Gossett v. State,* 224 Tenn. 374, 455 S.W.2d 585; *Taylor v. State, supra; McGee v. State,* 2 Tenn.Cr.App. 652, 455 S.W.2d 656.

■ By the testimony of the defendant's own witness it is established that he acquired a new pair of shoes as a gift from his paramour who bought them from his co-defendant for only $5.00. We feel that from this circumstance and others related, the jury could reasonably infer the essential element of guilty knowledge necessary to sustain this conviction. Manifestly, the defendant has failed to carry his burden of demonstrating in this Court that the evidence preponderates against the verdict of the jury and in favor of his innocence. *Webster v. State,* 1 Tenn.Cr.App. 1, 425 S.W.2d 799 (1967); *Shadden v. State,* 2 Tenn.Cr.App. 450, 455 S.W.2d 164 (1970); *Cagle v. State,* 507 S.W.2d 121 (Tenn.Cr. App.1973).

Defendant next assigns as error that the judge allowed the jury to consider the first two counts of the indictment, burglary and larceny, as they tended to prejudice the jury against the defendant. The defendant was indicted in a four count indictment, the four counts charging him with burglary, larceny, receiving stolen goods and concealing stolen goods, respectively. The court charged the jury as to all of the counts, but instructed them that they could convict the defendant on not more than one of the counts, if any.

■ As noted, the evidence placed the defendant at the scene of the burglary very shortly before the crime took place and showed he had exclusive personal possession of property taken in the burglary soon after it occurred. From these facts (if believed) the jury could have found the defendant guilty of either burglary or larceny.

■ It is common and correct practice to charge burglary, larceny, receiving stolen property and concealing stolen property in separate counts in an indictment when all those offenses relate to one criminal episode. And such an indictment is not objectionable for duplicity. *Cronan v. State,* 113 Tenn. 539, 82 S.W. 477. See: *Gamble v. State,* 215 Tenn. 26, 383 S.W.2d 48.

We reviewed the principle involved in *Halquist v. State,* 489 S.W.2d 88 (Tenn.Cr. App.1972):

"It is well settled in this State that if the different offenses charged in the different counts grow out of the same transaction, or if they be but different species of the same offense, the several counts may and should be joined in the same indictment. *Galbreath et al. v. State,* 187

Tenn. 669, 216 S.W.2d 689; *Tenpenny v. State,* 151 Tenn. 669, 679, 270 S.W. 989; *Davis v. State,* 85 Tenn. 522, 526, 3 S.W. 348; *Foute v. State,* 83 Tenn. 712; *Kannon v. State,* 78 Tenn. 386; *Murphy v. State,* 77 Tenn. 373, 377; *Smith v. State,* 76 Tenn. 386; *Lawless v. State,* 72 Tenn. 173; *Hall v. State,* 71 Tenn. 552, 558; *Smith v. State,* 70 Tenn. 614; *Kelly v. State,* 66 Tenn. 84; *Ayrs v. State,* 45 Tenn. 26, 28; *State v. Lea,* 41 Tenn. 175; *Cash v. State,* 29 Tenn. 111; *Wright v. State,* 23 Tenn. 194. In *Galbreath v. State,* 187 Tenn. 669, 216 S.W.2d 689, *supra,* the Court said: 'The insertion of several counts charging kindred offenses which the proof may develop to be a violation of one statute or another is a common and approved practice, and tends to a much more rapid dispatch of the business of the Court. We do not think such practice is either unfair or prejudicial to defendants.'

"And where the several counts of an indictment are based upon the same transaction, the State cannot be required to elect to proceed upon one count or the other. *Raine v. State,* 143 Tenn. 168, 226 S.W. 189; *Lawless v. State, supra.*"

This familiar rule that allows inclusion of more than one offense of the same grade or class in as many separate counts of the same indictment contemplates a separate charge for each offense. In other words, in such a case the defendant is put upon his trial for exactly what he is charged with. *Holt v. State,* 107 Tenn. 539, 64 S.W. 473.

In *Casey v. State,* 491 S.W.2d 90 (Tenn. Cr.App.1972), we said: "It is fundamental that in criminal cases there is a positive duty upon the trial judge to give the jury a complete charge on the law applicable to the facts of the case, and that the defendant has a right to have every issue of fact raised by the evidence and material to his defense submitted to the jury upon proper instructions by the trial court. *Poe v. State,* 212 Tenn. 413, 370 S.W.2d 488. Various cases illustrating and emphasizing those principles are cited in *Poe.*"

■ Of course this means that the trial judge must instruct the jury as to all counts in an indictment.

By his fourth Assignment of Error the defendant complains that the court should have granted his motion for a mistrial when the jury first returned a verdict of guilty as to both receiving and concealing stolen goods.

When this occurred, the Court stated: "Ladies and gentlemen of the jury, your forlady [sic] has stated that you find the defendant guilty under the 3rd and 4th counts of the indictment. The third count charges receiving stolen property and the fourth count charges concealing stolen property. Retire and re-read your original charge and continue to deliberate further and when you are ready to report your verdict, advise the Court."

■ Receiving and concealing stolen property are separate and distinct crimes. *Sullivan v. State,* 513 S.W.2d 152 (Tenn.Cr. App.1974), and authorities therein cited; TCA § 39-4217.

■ When the jury reports an incorrect or imperfect verdict, the court has the power and the duty to send them back to the jury room with directions to amend the verdict and put it in proper form. *State v. Brown,* 209 Tenn. 141, 149–151, 351 S.W.2d 385. See: *Jenkins v. State,* 509 S.W.2d 240 (Tenn.Cr.App.1974).

■ Defendant also complains that his sentence of 18 months to five years was so excessive, given the fact that all that allegedly was proven to have been received by him was one pair of shoes, as to be "arbitrary, capricious, and showed prejudice against the defendant on the part of the jury." The sentence was within the statutory limits and the jury was charged by the trial court that, if they felt the statutory sentence to be too severe, they could set a sentence of not more than 12 months in the county jail. Where, as in this case, the

sentence imposed is within the applicable statutory limits of punishment, a claim that it was corruptly motivated by passion, prejudice and caprice on the part of the jury is untenable. *Headrick v. State,* 519 S.W.2d 403 (Tenn.Cr.App.1975). See: *Yearwood v. State,* 2 Tenn.Cr.App. 552, 455 S.W.2d 612, in which a sentence of one to five years for larceny of one pair of shoes valued at $5.00 was held not to be excessive.

Affirmed.

GALBREATH and RUSSELL, JJ., concur.