**Jessie Lee GWINN, Appellant,**

v.

**STATE of Tennessee, Appellee.**

Court of Criminal Appeals of Tennessee
Jackson.

Oct. 18, 1979.

Permission to Appeal Denied by Supreme
Court Dec. 27, 1979.

Marvin J. Brode, Memphis, for appellant.

William M. Leech, Jr., Atty. Gen., Jennifer Helton Small, Asst. Atty. Gen., Nashville, Paul Thomas Hoover, W. Fred Axley, Asst. Dist. Attys. Gen., Memphis, for appellee.

OPINION

DAUGHTREY, Judge.

This is an appeal by Jessie Lee Gwinn from his convictions of burglary in the first degree and murder in the second degree, for which he received sentences of ten to fifteen years and twenty-three years imprisonment, respectively. On appeal the defendant challenges (1) the admissibility of his pre-trial confession, (2) the sufficiency of the evidence to support the jury's verdict, (3) the trial court's refusal to give two requested jury instructions, and (4) the validity of the second degree murder verdict. We find no reversible error in the record, and we therefore affirm the conviction.

The charges against Gwinn resulted from the homicide of an elderly Shelby County man as he slept in his bed and the theft of a large amount of money from his wallet. The proof showed that the victim suffered lethal blows to the head and jaw from a two-by-four, which was found at the scene of the crime. The killing was discovered by the victim's brother, who resided at the same address but was not at home at the time of the homicide.

The most damaging evidence against the defendant was a confession he made to police the night he was taken into custody, some three days after the homicide occurred. Gwinn told officers that he entered the victim's house through a window. He said that he first stayed in the kitchen, but hearing someone cough in the bedroom, he entered and saw the victim lying on the bed. Gwinn said he spotted a billfold nearby, picked up a stick from the floor and hit the victim twice, then took the billfold and left the house. He said he got $1,800.00 from the victim's wallet, which was later found just outside the victim's house. Concluding his narrative, Gwinn told police that he did not realize that he had killed the elderly victim until the incident was reported in a local newspaper, and he said he "didn't mean to kill nobody, [but] just went there to knock him out and rob him."

Defense counsel objected to the introduction of Gwinn's statement, arguing that it was not freely, voluntarily and understandingly made, primarily because the defendant did not have the capacity to make such a statement. In the jury's absence, a psychological examiner testified for the defense that at 28 years old Gwinn had an I.Q.

of 50, comparable to that of a third grade child. Gwinn testified that he could not read or write, other than his own name. Furthermore, he denied making the statement offered by the State, and he denied that the signature at the end of the written confession was his. He testified and was cross-examined as to his ability to understand various words used in the typed statement. Called by the State, two Memphis police officers and a police department stenographer, who had typed the defendant's statement as he gave it, testified that Gwinn acted normally while he was questioned by police, that he appeared to understand his rights, that he was read the statement after it was typed, and that he signed it and initialled the individual pages.

■ At the conclusion of the admissibility hearing, the trial court found as a matter of fact "that the statement was freely and voluntarily given, and that [the defendant] did in fact have the capacity to make that statement, and that he understood all of its contents, as far as the four corners are concerned, and that the signature is in fact genuine. . . ." Under Tennessee law this finding is binding on us, if there is any evidence to support it. *State v. Chandler*, 547 S.W.2d 918 (Tenn.1977). The trial judge's conclusions of fact are given the weight of a jury verdict, and upon appeal, the defendant has the burden of showing that the evidence preponderates against those findings. *Taylor v. State*, 180 Tenn. 62, 171 S.W.2d 403 (1943); *Janow v. State*, 4 Tenn.Cr.App. 195, 470 S.W.2d 19 (1971). We conclude that the evidence supports the trial court's ruling, and we therefore reject the defendant's argument that the trial judge improperly permitted the statement to go to the jury.

■ As for the contention that the defendant was retarded and therefore unable to make a statement of the nature introduced at trial, the jury was properly instructed on the manner in which they were to receive the proffered confession and to assess its value. Once the trial judge had made the preliminary decision regarding the admissibility of the statement, it was within the jury's province to decide how much weight to give it, based on all the relevant circumstances in the record. They heard the testimony of various experts, whose collective opinion was that the defendant was mildly retarded and had a "borderline" I.Q., that he was antisocial in his behavior but was not insane, and that he suffered from brain damage which resulted in periodic epileptic fits, accompanied by unconsciousness. According to the record, Gwinn also had a history of alcohol abuse, but there was no evidence that he was unable to understand his surroundings or to control his own behavior.

■ Given our determination that the confession was properly admitted into evidence, we have no difficulty in concluding that the evidence adduced at trial was fully sufficient to support the jury's verdict. The State introduced several witnesses, the most salient of whom testified that Gwinn had come to his aunt and uncle's home at 6:30 A.M. one morning, in the possession of a large sum of money which he wanted his aunt to keep for him, and that he said at one point that he had gotten the money by hitting a man with a two-by-four. One witness testified that Gwinn told him a week or so before the homicide that he knew where two old men lived who had plenty of money; the witness said he warned Gwinn that if he robbed or otherwise harmed the old men, he would never be able to sleep at night "because it would go to bed with him and it would get up with him." Despite the fact that Gwinn was unemployed and was behind in his rent, there was proof that he engaged in free spending around the time of the homicide. Moreover, when Gwinn was arrested, police found $1500.00 in cash on his person. Given the defendant's statement detailing his complicity in the homicide, together with the extensive circumstantial evidence of his guilt, we have no hesitation in holding that the proof amply supports the jury's verdict. Certainly we are unable to say that "no rational trier of fact could have found proof of guilt beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 324, 99

S.Ct. 2781, 2792, 61 L.Ed.2d 560, 576–7 (1979); see also Tennessee Rules of Appellate Procedure, Rule 13(e).

■ The defendant next complains of the trial court's failure to give the jury two requested instructions, the first relating to the proof of *corpus delicti* necessary to corroborate the defendant's confession and the other to the failure of the State to call a "missing witness." We find no error in the trial court's denial of these requests. The record is replete with proof of the *corpus delicti*, and the jury was given appropriate instructions concerning the defendant's pretrial statement. Although there was police testimony to the effect that certain physical evidence connected to the case was sent to the F.B.I. for examination, the investigating officer further testified that the results of F.B.I. testing were "inconclusive." The State's failure to subpoena an F.B.I. representative under these circumstances did not entitle the defendant to a "missing witness charge," there being no proof that the State withheld a witness with peculiar knowledge of essential facts who was available to the State but not to the defense. See Tennessee Pattern Instructions—Criminal 37.14; *Cantrell v. State*, 3 Tenn.Cr.App. 434, 463 S.W.2d 145 (1970).

■ Finally, we find no error with regard to the second degree murder verdict returned by the jury. The transcript shows that although the jury was properly instructed on the range of punishment for second degree murder, they were given an outdated "verdict form" for that offense. As a result they returned a verdict finding Gwinn guilty of second degree murder and, filling in the blanks on the erroneous "verdict form," they purported to sentence him to an indeterminate sentence of fifteen to twenty years, rather than a determinate sentence of life or some period of time not less than ten years, as required by the applicable statute (and as they had been properly instructed to do in the text of the charge). When the error was discovered shortly after the jury returned to the courtroom, the trial judge refused to accept the verdict in the form in which it had been announced. He gave the jury written supplemental instructions and sent them out for further deliberation. They returned several hours later and reported a verdict finding the defendant guilty of second degree murder and setting his sentence at twenty-three years in prison. The defendant now contends that the penalty portion of this verdict is invalid.

■ We conclude that the trial judge properly required the jury to amend its verdict in this case. When a jury returns an incorrect or imperfect verdict, the trial court has both the power and the duty to send them back to the jury room with directions to amend the verdict and to put it in proper form. *Meade v. State*, 530 S.W.2d 784, 787 (Tenn.Cr.App.1975). See also *Riley v. State*, 189 Tenn. 697, 227 S.W.2d 32 (1950); *Jenkins v. State*, 509 S.W.2d 240 (Tenn.Cr.App.1974). Furthermore, we find no legal basis for the defendant's reliance on *North Carolina v. Pearce*, 395 U.S. 711, 89 S.Ct. 2072, 23 L.Ed.2d 656 (1969), which he cites for the proposition that any period of time over the minimum sentence first reported by the jury is invalid. The *Pearce* decision forbids an increased sentence upon retrial where the increase is attributable to vindictiveness against the defendant. But this case involves no such retrial, and there is simply no proof in this record that the defendant's twenty-three year sentence for second degree murder was the product of jury vindictiveness.

The defendant further contends that the decision in *Landers v. State*, 157 Tenn. 648, 11 S.W.2d 868 (1928) is controlling here. We cannot concur. In *Landers* the jury initially returned a verdict of three years on a burglary conviction, and were sent back for further consideration of their verdict, finally reporting a sentence of not less than three nor more than five years imprisonment. On appeal, the Tennessee Supreme Court held that the original verdict was valid and complete, as the equivalent of a sentence of not more nor less than three years, and that it should have been accepted by the trial court.

**836**

But unlike the initial verdict in *Landers*, the original verdict in this case was not legally valid, as is evident from a reading of the Supreme Court's recent opinion in *State v. Williams*, 575 S.W.2d 948 (Tenn.1979). There the jury first reported a purportedly indeterminate sentence of "not less than ten years," following an erroneous instruction from the trial judge in which he charged the jury that upon conviction of second degree murder the defendant would be subject to an indeterminate sentence of not less than ten nor more than twenty years. The jury was sent back for redetermination of the sentence, returning with a sentence of "not less than 10 nor more than 15 years." The ruling of this Court that the original verdict was the valid equivalent of a determinate ten year sentence was reversed by the high court, which held that the original verdict "cast in the form of an indeterminate sentence, in no way complies with the requirement of certainty of time required by the determinate sentence law, and is facially void." 575 S.W.2d at 949.

Although the *Williams* Court remanded the case for a redetermination of the sentence, *id.* at 950, similar action is unnecessary here. Because the original verdict was "facially void" under *Williams*, it was both appropriate and necessary that the trial court send the jury back for further deliberations. *Meade v. State, supra.* Their final penalty determination is expressed in terms of a valid determinate sentence and falls within the range of punishment set by the statute for the offense of second degree murder. We therefore have no hesitation in upholding the punishment portion of the verdict and judgment.

Finding no error in the record, we affirm the judgment of the trial court.

WALKER, P. J., and O'BRIEN, J., concur.