IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT NASHVILLE
May 11, 2022 Session

## STATE OF TENNESSEE v. IDA VERONICA THOMAS

**Appeal from the Criminal Court for Davidson County**
**No. 2019-B-1278    Angelita Blackshear Dalton, Judge**

———————————————

**No. M2021-00817-CCA-R3-CD**

———————————————

The Defendant, Ida Veronica Thomas, pleaded guilty to theft of property valued at $60,000 or more, but less than $250,000 and, pursuant to a plea agreement, the trial court ordered the Defendant to serve twelve years on community corrections.  At a subsequent restitution hearing, the trial court imposed a restitution amount of $151,385, to be paid at a rate of $75 per month.  The Defendant appealed, and this court affirmed the case in part, but remanded the case for the trial court to order a presentence report and determine the restitution amount, distinct from the pecuniary loss, by considering the Defendant's financial resources and ability to pay.  *State v. Ida Veronica Thomas,* No. M2019-02137-CCA-R3-CD, 2021 WL 286736, at *1 (Tenn. Crim. App., at Nashville, Jan. 28, 2021).  On remand, the trial court ordered a restitution amount of $92,225 to be paid monthly according to a graduated payment schedule.  The Defendant now appeals from the trial court's order of restitution.  Finding no error, we affirm the judgment of the trial court.

### Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Affirmed

ROBERT W. WEDEMEYER, J., delivered the opinion of the court, in which ROBERT L. HOLLOWAY, JR., and JOHN W. CAMPBELL, SR., JJ., joined.

Jeffrey A. DeVasher (on appeal) and Anne E. Berry (at hearings), Assistant Public Defenders, Nashville, Tennessee, for the appellant, Ida Veronica Thomas.

Herbert H. Slatery III, Attorney General and Reporter; T. Austin Watkins, Senior Assistant Attorney General; Glenn R. Funk, District Attorney General; and Brittani L. Flatt and Chadwick W. Jackson, Assistant District Attorneys General, for the appellee, State of Tennessee.

### OPINION
### I. Facts

## A. Background

The Defendant pleaded guilty to theft of property valued at $60,000 or more, but less than $250,000, based upon the State's proof that the Defendant took thirty-eight pieces of jewelry valued at around $243,000 from the residence of the elderly victim. At the time of the theft, the Defendant worked as a caretaker for the elderly victim giving her access to the victim's home and valuables. Pursuant to a plea agreement, the trial court ordered the Defendant to serve twelve years on community corrections and scheduled a subsequent restitution hearing. At the restitution hearing, the trial court ordered restitution in the amount of $151,385, the amount of the victim's net pecuniary loss, to be paid at a rate of $75 per month. On appeal, among other issues, the Petitioner challenged the trial court's payment schedule, arguing that the payment schedule did not allow for completion of the payment of restitution during the length of the Defendant's sentence. The State conceded this was error, and we remanded the case to the trial court to: (1) order a presentence report as required by statute in restitution cases; and (2) consider the Defendant's financial resources, future ability to pay, and length of community corrections sentence in determining both a restitution amount and a payment schedule for restitution.

## B. Sentencing Hearing

On remand, the trial court held a sentencing hearing on the issue of restitution. The trial court stated at the onset that the purpose of the hearing was to consider the restitution amount in light of the Defendant's financial resources and ability to pay. The trial court also stated that, following the proof, the trial court would take the matter under advisement in order to carefully consider the restitution in compliance with "the CCA's directive."

At the State's request and without objection, the trial court entered into evidence the November 22, 2019 sentencing hearing transcript. The trial court also admitted an exhibit from the November sentencing hearing that the trial court had relied upon in determining a pecuniary loss of $151,385. The exhibit listed the missing items and the value of each item. The State offered no other proof.

The Defendant testified that, at the advice of an attorney, she had filed for bankruptcy in 2018 pursuant to Chapter 7 of the Bankruptcy Code. The trial court admitted the "Bankruptcy filing" into the record. Following the bankruptcy, the Defendant lost her car and no longer had any credit cards. The Defendant attended a "budgeting program" where she was encouraged to apply for a prepaid Visa card at Regions Bank to help rebuild her credit. The Defendant referenced a $15 payment associated with this account and explained, "after this situation I haven't been able to pay [the $15] and that's building up." She confirmed that she currently owed money to Regions Bank related to the Visa card

2

account. The trial court admitted Regions Bank statements related to the credit card into the record. The Defendant confirmed that she owed Regions Bank $369.27.

The Defendant identified an overdue Comcast bill of $587.81 that the trial court admitted into evidence. The Defendant stated that she opened the Comcast account in "[p]robably 2015-16" and had not made a payment related to the account since 2018 or 2019.

The Defendant testified that following her bankruptcy filing, "Credit One sent [her a credit card] just to rebuild [her] credit." The credit card had a $300 limit. The Defendant used the card but, beginning in 2018, she was unable to pay the credit card company. The Defendant submitted a credit card statement dated February 4, 2019, showing a past due balance of $246.85. A statement from a collections agency dated December 14, 2020, listed $592.16 as the accrued amount owed. The Defendant stated that she had not made any payments related to this debt or made any payment arrangements for the account.

The Defendant identified a payment notice related to a Capital One credit card indicating a balance of $2,943.76 and a minimum payment of $374.00. The account notification indicated a payment due date of March 22, 2021.

The next exhibit was an FSNB Account Notice. The Defendant explained that this Notice was in relation to a banking account that she opened "in Wal-Mart for $5." The Defendant "was putting money in there, but then it was, it got overdrawn." The Defendant stated that she opened the account in 2016 or 2017 and that the account had since been turned over to a collections agency. The trial court entered an exhibit from FSNB, dated April 20, 2021, indicating that the Defendant owed $41.25 and $331.25 on two separate overdrawn accounts.

The Defendant confirmed that the presentence report reflected that she had reported owing money to Verizon. She explained that the account was opened through Mr. Herbert Van Weatherspoon. [1] Mr. Weatherspoon's name was on the account, and he paid the bills but she had agreed to repay him for her portion. She clarified that when she said she owed Verizon, she meant she owed Mr. Weatherspoon for paying the Verizon bill on her behalf.

The Defendant testified that she opened a bank account with Fifth Third Bank in 2019 following her bankruptcy. This account became overdrawn by $65 at some point, and Mr. Weatherspoon paid the overdrawn amount to keep the account open. Based upon

---

[1] At the November 2019 hearing, the Defendant testified that Mr. Weatherspoon was her fiancé. Their relationship status is not addressed at the April 2021 hearing. In the briefs, the State refers to Mr. Weatherspoon as the Defendant's fiancé and the Defendant refers to Mr. Weatherspoon as a "friend."

the recommendation of a bank employee, the Defendant opened a new account with the bank. The Defendant identified a document showing she had an active account with Fifth Third Bank.

The Defendant recalled that she last filed her taxes in 2018. She stated that, because she had been a student in the years following, she did not believe she owed taxes. The Defendant initially denied owing the Internal Revenue Service ("IRS") money, but then agreed that she had received a notice that she owed money to the IRS. The Defendant maintained that she did not believe she owed taxes because she was a student during 2019 and 2020 and did not have a job. She agreed that she received two tuition statements for tax purposes related to her education and had worked for a "staffing agency" temporarily.

The Defendant testified that she had a short-term job at a bakery but lost the job once her employer learned of her criminal history. Another job, at the Toyota plant, was located in a different county, so her Community Corrections officer told her she had to quit. The Defendant currently worked for "O'Reilly"; however, the Defendant suspected that her employment would be terminated once the company completed her background check.

The Defendant testified that she graduated from HVAC school on December 16; however, she has been unable to obtain employment in this field due to her felony conviction.

At the time of the hearing, the Defendant lived with Herbert Van Weatherspoon, and he had been financially supporting her. Unfortunately, Mr. Weatherspoon sustained injuries from a work-related accident and had been unable to work while he recovered. The Defendant was not named on the lease, and she had not paid Mr. Weatherspoon rent. She noted, however, that she had recently paid a $188 electric bill associated with the residence. The Defendant did not own a car but contributed toward Mr. Weatherspoon's car insurance because she used his vehicle. She also contributed approximately $100 in gas. The Defendant estimated that she spent approximately $140 a month for her "personal stuff."

The Defendant testified that she was remorseful for her conduct. She explained the impact of the consequences of her conduct on her daily life and ability to work. About her current employment, she stated that she earned $16.25 per hour and $24.38 per hour for overtime pay. Based upon paystubs the Defendant submitted as an exhibit, the Defendant confirmed that she received approximately $625 to $640 a week, thus, approximately $2600 a month. She further confirmed that her debts had been discharged in 2018 related to her bankruptcy.

4

On cross-examination, the Defendant confirmed that she did not file tax returns for 2019 or 2020 because she was a full-time student. Upon further questioning, she agreed that she worked for Lansko Products from January 1, 2019 to March 1, 2019, and worked at VI-Jon All Star Personnel from February 1, 2019 to June 1, 2019. The Defendant also worked "periodically" for H-I Building Maintenance owned by Mr. Weatherspoon.

Based upon the testimony and evidence presented at the hearing, the trial court found that the Defendant's monthly income was approximately $2500, her recurring bills and expenses were $700 per month and her outstanding debt was $5167. About the Defendant's monthly bills, the trial court found $470 in named expenses and then provided an additional $230 "for any fluctuations in food, gas or electric costs." In considering the outstanding debt, the trial court found a monthly payment of $374 toward the total debt amount of $5167 and allowed for an additional $200 each month toward the repayment of the outstanding debt. The trial court then considered the Defendant's income or ability to pay. In determining the restitution amount, the trial court relied upon the Defendant's testimony that she made $2600 per month but noted that an HVAC technician's pay ranged from $34,000 to $82,000, an increase over the Defendant's current pay outside the HVAC field. The trial court encouraged the Defendant to continue pursuing work as an HVAC technician.

In light of all of these facts, the trial court set the total restitution amount at $92,225. The trial court credited the Defendant for her past restitution payments totaling $975, leaving a remaining restitution amount of $91,250. The trial court then set a graduated payment schedule, providing the Defendant with an opportunity to seek better-paying employment and meet with a financial counselor. As part of the resentencing, the trial court also addressed the Defendant's testimony indicating a lack of understanding about management of personal finances. In order to aid the Defendant in successful completion of the restitution payments, the trial court ordered the Defendant to enroll in the Metro Nashville Financial Empowerment Center's one-on-one program to work with a financial advisor "to set and accomplish her goals and maintain a budget." As to the graduated restitution payment schedule, the restitution amount was to remain the same, $75 per month, through December 2021. Beginning in January 2022, the monthly payment amount would increase to $400 per month until June 2022. The Defendant would pay $600 per month beginning July 2022 through December 2022, and $800 per month beginning January 2023 through November 2031. It is from this judgment that the Defendant appeals.

## II. Analysis

On appeal, the Defendant asserts that the trial court improperly calculated the restitution amount. She further argues that the imposition of a graduated increase in monthly restitution payments following the Defendant's successful appeal is an act of

judicial vindictiveness. The State responds that the trial court set a reasonable restitution amount and that the trial court's restitution schedule is based upon the facts and not a vindictive act. We agree with the State.

## A. Restitution Amount

The Defendant argues that the trial court erred in calculating restitution. She asserts that the trial court gave inadequate consideration to the Defendant's financial resources and future ability to pay, speculatively estimated the Defendant's future earnings, and estimated the Defendant's future earnings based upon information obtained through independent investigation. The State responds that the trial court relied upon the proof submitted at the hearing about the Defendant's financial situation and her ability to pay in determining a reasonable restitution amount.

When a defendant challenges the restitution amount ordered by the trial court, this Court will utilize an abuse of discretion standard of review with a presumption that the trial court's ruling was reasonable. *See State v. Bise*, 380 S.W.3d 682, 708 (Tenn. 2012); *State v. Caudle*, 388 S.W.3d 273, 279 (Tenn. 2012); *see also State v. David Allen Bohanon*, No. M2012-02366-CCA-R3-CD, 2013 WL 5777254, at *4 (Tenn. Crim. App., at Nashville, Oct. 25, 2013), *no perm. app. filed* (concluding that "the appropriate standard of review for restitution orders is the abuse of discretion standard with a presumption of reasonableness"). A finding of abuse of discretion "'reflects that the trial court's logic and reasoning was improper when viewed in light of the factual circumstances and relevant legal principles involved in a particular case.'" *State v. Shaffer*, 45 S.W.3d 553, 555 (Tenn. 2001) (quoting *State v. Moore*, 6 S.W.3d 235, 242 (Tenn. 1999)). Furthermore, the defendant bears the burden of demonstrating the impropriety of the sentence. *See* T.C.A. § 40-35-401 (2019), *Sentencing Comm'n Cmts*; *State v. Ashby*, 823 S.W.2d 166, 169 (Tenn.1991).

Tennessee Code Annotated section 40-20-116 mandates restitution of either the property or, if that is not possible, the value of the property in cases in which a defendant has been convicted of "stealing or feloniously taking or receiving property[.]" T.C.A. § 40-20-116(a) (2018). The purpose of ordering restitution is to compensate the victim and to punish and rehabilitate the defendant. *State v. Johnson*, 968 S.W.2d 883, 884 (Tenn. Crim. App. 1997).

While there is no set formula for determining restitution, above all, the restitution amount must be reasonable. *State v. Smith*, 898 S.W.2d 742, 747 (Tenn. Crim. App. 1994). When ordering restitution, the trial court must base the amount on the pecuniary loss to the victim. T.C.A. § 40-35-304(b) (2019); *Smith*, 898 S.W.2d at 747. The amount of restitution ordered, however, "does not have to equal or mirror the victim's precise

pecuniary loss." *State v. Mathes*, 114 S.W.3d 915, 919 (Tenn. 2003) (quoting *Smith*, 898 S.W.2d at 747). Tennessee law mandates that "[i]n determining the amount and method of payment or other restitution, the court shall consider the financial resources and future ability of the defendant to pay or perform." T.C.A. § 40-35-304(d) (2019).

At the time of sentencing, the court must specify "the amount and time of payment or other restitution to the victim and may permit payment or performance in installments." T.C.A. § 40-35-304(c) (2019). Where a defendant is sentenced to supervised probation, as in this case, "any payment or performance schedule established by the court shall not extend beyond the expiration date [of the sentence imposed]." *Id*. § 40-35-304(g)(2).

In this case, the trial court determined that the restitution amount would not mirror the pecuniary loss of $151,385. The court reduced the amount from its prior order by $59,160 after considering the Defendant's financial resources and future ability to pay and set restitution at $92,225 ($91,250 after factoring restitution already paid). The trial court properly considered the Defendant's stated monthly income, her monthly expenses, and her outstanding debt in calculating the monthly restitution payment, finding $1200 in expendable monthly income after monthly expenses and payments toward her outstanding debt. We note that the trial court's findings assumed greater monthly expenses for the Defendant than the Defendant presented at the hearing, in order to allow for the Defendant to have adequate funds to absorb potential changes in her expenses during the term of her sentence. The trial court ordered monthly payments that would enable the Defendant to successfully pay the full restitution amount within the term of her sentence. At the maximum monthly payment of $800, the Defendant would still retain $400 of expendable monthly income. In light of these considerations, we cannot conclude that the restitution is unreasonable and that the trial court abused its discretion in ordering the restitution.

To the extent that the Defendant claims that the trial court improperly relied on an independent investigation of possible income for an HVAC technician, we disagree. The trial court based the restitution on the Defendant's testimony about her monthly income of $2600, not on the amounts the trial court mentioned were possible income for an HVAC technician. The trial court stated that the average yearly income of an HVAC technician was $52,555, which is significantly more than the $2500 monthly income that the trial court relied upon in setting restitution payments. Moreover, the trial court stated the $2500 was based upon the Defendant's testimony about her income in "a position outside of her field." It appears the trial court's mention of potential income in the Defendant's chosen field may have been to encourage the Defendant to seek employment in her field of study to maximize her earning potential and more easily meet her financial obligations. Whatever the reason for the trial court's reference to the average yearly income for HVAC technicians, the record is clear that the trial court relied upon the Defendant's testimony

that she made $2600 per month; thus, the trial court did not base the restitution on improper speculation. The Defendant is not entitled to relief as to this issue.

## B. Judicial Vindictiveness

The Defendant contends that the graduated restitution schedule is the result of judicial vindictiveness following the Defendant's successful appeal. She asks us to keep the restitution payment at $75 per month. The State responds that the restitution amount and payment schedule are based upon the trial court's factual findings that are supported by the record. We agree with the State.

In *North Carolina v. Pearce*, 395 U.S. 711 (1969), the United States Supreme Court held that it is a violation of basic due process to impose a sentence that is actually or likely motivated by judicial vindictiveness. *Id*. at 724-725. To prevent vindictiveness from entering into the decision, the Supreme Court held that whenever a defendant is subjected to a more severe punishment after a new trial, the reasons must affirmatively appear in the record. *Id*. at 726. This prophylactic measure is designed to assure defendants that they will not be punished for exercising their legal rights within the judicial system. *Id*. If the trial court fails to plainly state its reasons for the increased sentence in the record, a presumption of vindictiveness arises that can only be rebutted by objective information that would justify the increased sentence. *Jay Will Kilby v. State*, No. 03C01-9801-CR-00040, 1999 WL 447073, at *3 (Tenn. Crim. App., Knoxville, July 2, 1999), *perm. app. denied* (Tenn. Nov. 22, 1999). Application of the rule in *Pearce* is limited to instances where there is a reasonable likelihood that the sentence is the result of actual vindictiveness on the part of the trial court. *Alabama v. Smith*, 490 U.S. 794, 799 (1989). Otherwise, the burden remains upon the defendant to prove actual vindictiveness. *Id*.

In re-sentencing an offender, the trial court may consider relevant evidence occurring both before and after the original sentencing proceedings. *State v. Stanley Lawson*, No. 01C01-9607-CR-00320, 1997 WL 661483, at *12 (Tenn. Crim. App., Nashville, Oct. 24, 1997) (citing *Wasman v. United States*, 468 U .S. 559, 569 (1989)). A harsher sentence need not be based solely on information occurring subsequent to the original sentencing as long as the reasons for the increased sentence are affirmatively shown in the record. *Gilliam v. State*, 901 S.W.2d 385, 392 (1995).

Initially, we must point out that it is questionable whether *Pearce* applies to this case. *Pearce* and its progeny appear only to apply where the sentencing body imposes a more severe sentence after a new trial. *See, e.g., State v. Russell*, 800 S.W.2d 169, 173 (Tenn. 1990); *Gwinn v. State*, 595 S.W.2d 832, 835 (Tenn. Crim. App. 1979), *perm. app. denied*, (Tenn. 1979). In this case, the trial court originally sentenced the Defendant to pay restitution in the amount of the full pecuniary loss of $151,385. On remand, the trial court

*reduced* the imposed restitution amount to $92,225. Restitution of $92,225 is, technically, less severe than restitution of $151,285. It follows that *Pearce* does not necessarily apply. However, even if *Pearce* applies, the trial court did not err in sentencing the Defendant. The trial court affirmatively placed on the record its reasoning for setting a graduated payment schedule that would increase the monthly restitution payments over time to allow the Defendant to successfully fulfill her restitution requirement by the end of her sentence. The graduated payment schedule also allowed the Defendant time to benefit from the financial counseling the trial court ordered and to continue to seek better paid employment within the HVAC field.

Accordingly, we conclude that the sentence involving restitution imposed on remand was not an act of judicial vindictiveness. The Defendant is not entitled to relief as to this issue.

## III. Conclusion

For the above reasons, we find that the trial court properly determined the amount of and payment schedule for restitution. Accordingly, the trial court's judgment is affirmed.

_____
ROBERT W. WEDEMEYER, JUDGE

9