# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT KNOXVILLE
### June 28, 2016 Session

## STATE OF TENNESSEE v. ZACHARY GALE RATTLER

**Appeal from the Circuit Court for Sevier County**
**No. 19043-II Richard R. Vance, Judge**

_____

**No. E2015-01570-CCA-R3-CD – Filed October 19, 2016**

_____


A Sevier County jury convicted Zachary Gale Rattler ("the Defendant") of attempted first degree murder, aggravated burglary, especially aggravated robbery, and possession of a prohibited weapon. The trial court imposed a total effective sentence of sixty years, eleven months, and twenty-nine days in the Department of Correction. On appeal, the Defendant contends that: (1) the trial court erroneously instructed the jury on flight, violating the Defendant's right to trial by jury; (2) the trial court erred in admitting the Defendant's subsequent arrest in North Carolina as evidence of flight; (3) the trial court erred when it would not permit backstriking of potential jurors; (4) the trial court erroneously refused to reconvene the jury for the Motion for New Trial hearing; (5) the Defendant was denied his right to a fair and impartial jury because a juror failed to disclose knowledge of two of the State's witnesses; (6) the evidence was insufficient to support the Defendant's conviction for especially aggravated robbery; (7) the trial court erred in failing to require the jury to further deliberate after returning an "incorrect verdict"; (8) the sentence imposed by the trial court is excessive; (9) the jury improperly considered the Defendant's decision not to testify to the prejudice of the Defendant; and (10) cumulative error requires a new trial. Following a thorough review of the record and relevant authorities, we affirm the judgments of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgments of the Circuit Court Affirmed**

ROBERT L. HOLLOWAY, JR., J., delivered the opinion of the court, in which CAMILLE R. MCMULLEN and ROBERT H. MONTGOMERY, JR., JJ., joined.

Edward C. Miller, District Public Defender, and Rebecca V. Lee, Assistant District Public Defender, for the appellant, Zachary Gale Rattler.

Herbert H. Slatery III, Attorney General and Reporter; Benjamin A. Ball, Senior Counsel; James Dunn, District Attorney General; and Ron C. Newcomb, Assistant District Attorney General, for the appellee, State of Tennessee.

**OPINION**

## I. Factual Background

On the night of November 26, 2012, Toby Norton ("the victim") returned home after having dinner at his mother's residence only a few houses away. The victim typically left the front door to his home unlocked because his mother occasionally stopped by to do laundry or to look after the victim's son. However, when he returned home that night, the victim found the door locked. After the victim attempted to open the door, it opened seemingly on its own. Not seeing anyone in the doorway, the victim entered the residence. The Defendant then stepped out from behind a bedroom door, pointing the victim's own .30-.30 hunting rifle at him. The victim noticed that other firearms and various valuables belonging to him were piled in the living room floor. The victim did not know the Defendant, and he asked what the Defendant was doing in his home. The Defendant ordered the victim to sit on the couch and wait for Bo Reed, who was a friend of the victim. However, the victim grabbed the barrel of the rifle and knocked it away before grabbing the Defendant in a headlock, throwing him to the floor, and punching him twice. The victim then called 911 and reported that he had caught a burglar in his home.

As the victim attempted to provide the dispatcher with more information, the Defendant began yelling that he "didn't do nothing [sic]." The victim instructed the Defendant to get on the ground, or he would "knock [him] out." After telling the dispatcher his address, the victim explained that he returned home to find the Defendant holding his hunting rifle. The victim stated, "I grabbed my hunting rifle and knocked him upside the head." While the victim was still on the phone with the police dispatcher, the Defendant drew a knife and stabbed the victim in the side. The victim struggled with the Defendant and then realized that he had been stabbed after he felt blood pouring from the wound. The victim began to feel weak and fell to the floor. The Defendant then crawled over him, pulled the victim's head back, and cut his throat, slicing so deeply that the knife penetrated the victim's mouth and cut his tongue. Despite the serious injury to his neck, the victim continued to struggle, biting the Defendant's hand and pushing him away. The victim got up and ran for his front door. As he reached the door, the Defendant pursued him and stabbed him twice more in the back. The victim continued to run towards his mother's house, screaming for help and that he was dying. His niece and mother attended to him until the arrival of police and paramedics.

Officers Trinity Brown and Jeremy Croce of the Pigeon Forge Police Department ("PFPD") were dispatched to the victim's residence on a report of a burglary in progress. On the way to the scene, the dispatcher informed them that there was also a victim of a stabbing at the scene. As they approached the residence, the officers saw a car speed out of the driveway with its headlights off. The officers stopped the car, which belonged to the victim, and found the Defendant at the wheel. As they approached the vehicle, Officer Croce saw that the Defendant had blood on his shirt and a "bloody spring-loaded knife" in his lap. Officer Brown ordered the Defendant out of the car and onto the ground. After placing the Defendant in handcuffs, officers recovered the knife, and they discovered that the Defendant had several .30-.30 caliber rounds in his pocket. Officer Brown noted that, despite the large amount of blood on the Defendant, the Defendant had only a bite wound to his hand, for which he later received medical attention. The Defendant admitted that he did not have permission to take the victim's car but stated that he took the car to get away from an altercation with the victim.

Sergeant Ralph Carr of the PFPD also responded to the victim's residence. He saw no signs of forced entry, but the interior of the house had blood stains on the walls. While clearing the house, Sergeant Carr noticed a pile of guns lying on the floor. A .30-.30 caliber rifle, however, was separated from the other weapons. Sergeant Carr discovered that the rifle was loaded with a round in the chamber. He cleared the chamber and emptied the weapon of ammunition before proceeding to check the rest of the house. Officers did not collect the .30-.30 rifle as evidence.

When Lieutenant Gary Campbell responded to the scene, the victim was in the back of an ambulance, and the Defendant was in Officer Croce's custody. The victim told Lieutenant Campbell that he could identify the suspect and stated that he had "bitten the s*** out of the [suspect's] hand." Lieutenant Campbell requested that Officer Croce transport the Defendant over to the ambulance for a "show-up." Upon seeing the Defendant, the victim identified the Defendant as the assailant.

The Defendant was transported to the police department, and the victim was taken to the University of Tennessee Medical Center. When the victim arrived, he was hypotensive due to significant blood loss, and without timely medical attention, he faced a substantial risk of death. Trauma surgeon, Dr. Dana A. Taylor, operated on the victim and found that the stab wound to the victim's chest went "all the way through into his chest cavity and into his abdominal cavity[.]" The victim also sustained a twenty-inch laceration across his neck that extended into his mouth, two lacerations on his back, and two lacerations on his left arm. During surgery Dr. Taylor sutured and repaired the victim's stomach, diaphragm, and the external lacerations. Dr. William R. High, Sr., an oral and maxillofacial surgeon, repaired the laceration to the victim's neck and mouth.

The laceration required numerous stitches, both external and internal, to repair, and it resulted in the victim's suffering residual muscle damage, scarring, and numbness to the area.

After Officer Brown and Officer Croce transported the Defendant from the crime scene to the police department, the Defendant provided a written statement about the offense. In the mostly incomprehensible statement, the Defendant indicated that he was having a problem with his living arrangements. Officers collected the Defendant's bloody shirt and took photographs of the Defendant that showed "a possible abrasion or scarring" on the Defendant's forehead.

The following day, Lieutenant Campbell conducted an interview at the home of Mr. Reed, where he learned that Mr. Reed had dropped off the Defendant at the victim's home the day of the incident. Sally Reed, Mr. Reed's mother, said that the Defendant lived with her for about a month until he and Mr. Reed had an altercation. After the altercation, the Defendant collected his belongings, including a backpack, and Mr. Reed drove him to the victim's house. Mrs. Reed recalled that the victim and his girlfriend, Tiffany Grimmet, had been to her house several times to see Mr. Reed. She further stated that Mr. Reed was "messing around" with Ms. Grimmet, despite her dating the victim at the time. Lieutenant Campbell recalled that, a few weeks prior to offense, he was at the scene of a traffic stop that involved the victim's car. Mr. Reed and Ms. Grimmet were in the backseat of the car, and Lieutenant Campbell saw them kissing. Though no one was arrested during the stop, a citation was issued for drug paraphernalia found in the vehicle. Officers then called the victim to the scene to pick up his car.

During the investigation into the incident at the victim's home, it was determined that the knife used by the Defendant belonged to Charles Fox, whose residence was burglarized a few hours before the victim found the Defendant in his home. Additional stolen items from Mr. Fox's residence, including a DVD player, were found in the victim's residence when his family cleaned the residence following the assault.

In January 2014, the Sevier County Grand Jury indicted the Defendant by presentment with attempted first degree murder, attempted second degree murder, especially aggravated burglary, especially aggravated robbery, especially aggravated kidnapping, possession of a prohibited weapon, and theft over $1,000. Thereafter, the Defendant was released on bond pending trial. As a condition of his release, the trial court ordered that the Defendant be electronically monitored. Scott Cranmore of Tennessee Recovery and Monitoring was tasked with monitoring the Defendant's location through GPS. In April 2014, the Defendant failed to charge his GPS monitor as required, and Mr. Cranmore lost the ability to monitor the Defendant. Mr. Cranmore attempted to contact the Defendant numerous times at his home in Salisbury, North

Carolina, but the Defendant remained noncompliant. The Defendant was found several months later on an Indian reservation in Bryson City, North Carolina. A member of the Sevier County Sheriff's Department had to transport the Defendant back to Tennessee for trial.

At trial, a jury found the Defendant guilty of attempted first degree murder, especially aggravated burglary, especially aggravated robbery, possession of a prohibited weapon, and theft over $1,000.[1] After the jury foreperson announced the verdict, the trial court stated, "If the verdict as announced by your foreman is your verdict, would you please signify by raising your right hand? Let the record show all hands were raised." The court then asked if either the State or the Defendant wanted to poll the jury. Both parties responded that they did not want the jury polled.

One month after trial, the Defendant filed a Motion to Reconvene Jury, requesting that the trial court reassemble the jury in order to "correct a manifest injustice and to ensure the constitutional rights of the [D]efendant." He asserted that the jury verdict was not unanimous because one juror "never voted guilty." Further, the Defendant asserted that one juror failed to disclose during voir dire the juror's knowledge of the victim, Ms. Grimmet, and Mr. Reed. Thereafter, the Defendant filed an amendment to his Motion to Reconvene Jury, asserting that the jury took into consideration the Defendant's failure to testify and that one juror failed to disclose his prior criminal history.

At the Defendant's sentencing hearing, the State introduced a copy of the Defendant's presentence investigation report, along with certified copies of his prior convictions. The Defendant did not offer any proof. The trial court announced that it had considered the presentence report, the facts at trial, the principles of sentencing under the Sentencing Act, the statements and arguments of counsel, all exhibits, enhancement and mitigating factors, and "the entire record in this cause[.]" The trial court merged the conviction for theft over $1,000 into the conviction for especially aggravated robbery. The court sentenced the Defendant, as a Range I standard offender, to twenty-five years for attempted first degree murder, twenty-five years for especially aggravated robbery, and eleven months and twenty-nine days for possession of a prohibited weapon. The trial court sentenced the Defendant, as a Range II multiple offender, to twenty years for especially aggravated burglary. The court ordered all sentences to run consecutively. The court subsequently modified the Defendant's conviction for especially aggravated burglary to a conviction for aggravated burglary[2] and imposed a ten-year sentence,

---

[1] Before trial, the State dismissed the charge of attempted second degree murder. Additionally, the trial court dismissed the charge of especially aggravated kidnapping based on State v. White, 362 S.W.3d 559 (Tenn. 2012).

[2] See Tenn. Code Ann. § 39-14-404(d); State v. Holland, 860 S.W.2d 53, 60 (Tenn. Crim. App. 1993).

resulting in a total effective sentence of sixty years, eleven months, and twenty-nine days' incarceration.

Thereafter, the Defendant filed a timely Motion for New Trial. The Defendant filed several amendments to his Motion for New Trial, attaching to one such amendment an affidavit from juror Emily McGaha. Juror McGaha alleged that she did not vote in favor of convicting the Defendant on any charge and believed that he acted in self-defense. She further asserted that most of the jurors said that the Defendant "had to be guilty because he didn't testify" and that one juror stated that Mr. Reed and Ms. Grimmet could not attend the Defendant's trial because they were "in jail."

At the hearing on the Motion for New Trial, the State objected to the introduction of Juror McGaha's affidavit as hearsay, and the trial court sustained the objection. The trial court stated:

> The content of that, the Court recalls very clearly, and I did it specifically and deliberately at the conclusion of the proceedings when the jury had announced its verdict, I asked the jurors if the verdict as announced by their foreperson was their verdict. Each juror raised their hand. It would defeat the purpose of having a jury trial and deliberations and announce[ment] to the court if a juror could come back later and say, oh, I didn't do that . . . .

The Defendant then argued that some of the allegations contained in Juror McGaha's affidavit "reach the point of being an external influence, which juror affidavits are clearly admissible on." However, the trial court concluded, "Well, the credibility of this particular juror is gravely impacted by their statement, and remember, these jurors were under oath when they were sworn as jurors and indicated this was her verdict, and now to come back and say it wasn't her verdict, is—the Court must reject that."

Regarding the Defendant's claim that the trial court erred by refusing to allow backstriking[3] of potential jurors, the trial court first stated that it did not recall any objection being raised by the Defendant at the time of jury selection. However, defense counsel contended that "[t]here was an objection raised." The State responded that it was the State that made the motion to allow backstriking of potential jurors but that the trial court denied the State's motion. The State argued that the Defendant waived the issue because the Defendant "opposed the State's motion[.]" Defense counsel asked the trial court to take judicial notice that the defense objected to the court's refusal to allow backstriking. The trial court then stated it did not recall the ruling and that it further did

---

[3] "Backstriking" is the term for a party's exercise of a peremptory challenge to strike a prospective juror after initially accepting the juror.

not recall that either side attempted to strike any juror "that had been passed on." Defense counsel acknowledged that he did not attempt backstriking "because the Court had ordered we could not." The trial court ultimately found that the Defendant was not prejudiced "in any way" by the procedure used to select jurors at trial.

Following the hearing, the trial court entered a written order denying the Motion for New Trial. This timely appeal followed.

## II. Analysis

### 1. Jury Instruction on Flight

The Defendant asserts that the trial court erroneously instructed the jury on flight, thereby violating his right to a trial by jury. He avers that, although the State introduced evidence that he fled the scene of the crime, there was no evidence that he evaded police, hid out, or left the community. He contends that his failure to charge his GPS monitor occurred "approximately two years after the incident" and did not support a jury instruction on flight. The State responds that the trial court properly instructed the jury on flight as the evidence demonstrated that the Defendant fled the victim's home at a high rate of speed and that, after his arrest, he stopped charging his GPS monitoring device and evaded attempts to locate him.

Challenges to jury instructions present mixed questions of law and fact; therefore, we review challenged instructions de novo without a presumption of correctness. State v. Rush, 50 S.W.3d 424, 427 (Tenn. 2001) (citing State v. Smiley, 38 S.W.3d 521, 524 (Tenn. 2001)). "It is well-settled that a defendant has a constitutional right to a complete and correct charge of the law, so that each issue of fact raised by the evidence will be submitted to the jury on proper instructions." State v. Dorantes, 331 S.W.3d 370, 390 (Tenn. 2011) (citations omitted). The instruction must provide a "'clear and distinct exposition of the law'" in order to "satisf[y] a defendant's constitutional right to trial by jury." State v. Phipps, 883 S.W.2d 138, 150 (Tenn. Crim. App. 1994) (quoting State v. McAfee, 737 S.W.2d 304, 308 (Tenn. Crim. App. 1987)). Further, the trial court "must instruct the jury on those principles closely and openly connected with the facts before the court, and which are necessary for the jury's understanding of the case." State v. Elder, 982 S.W.2d 871, 876 (Tenn. Crim. App. 1998).

In determining whether jury instructions are erroneous, this court must review the charge in its entirety and invalidate the charge only if, when read as a whole, it fails to fairly submit the legal issues or misleads the jury as to the applicable law. State v. Vann, 976 S.W.2d 93, 101 (Tenn. 1998). "An instruction is 'prejudicially erroneous' when 'it

- 7 -

fails to fairly submit the legal issues or if it misleads the jury as to the applicable law.'" State v. Smith, 492 S.W.3d 224, 245 (Tenn. 2016) (quoting Vann, 976 S.W.2d at 101).

"In order for a trial court to charge the jury on flight as an inference of guilt, there must be sufficient evidence to support such instruction." State v. Berry, 141 S.W.3d 549, 588 (Tenn. 2004). There is sufficient evidence to justify a flight instruction when the State has established "both a leaving the scene of the difficulty and a subsequent hiding out, evasion, or concealment in the community, or a leaving of the community for parts unknown." State v. Whittenmeir, 725 S.W.2d 686, 688 (Tenn. Crim. App. 1986) (internal quotation marks omitted). The State may satisfy the subsequent hiding out, evasion, or concealment requirement by presenting proof from which a jury might infer that the defendant committed such acts. State v. Scotty Dale Staggs, No. M2011-01675-CCA-R3-CD, 2013 WL 2722286, at *18 (Tenn. Crim. App. June 12, 2013) (citing State v. Terrance Wilks, No. W1999-00279-CCA-R3-CD, 1999 WL 1097832, at *4 (Tenn. Crim. App. Nov. 22, 1999)). This court has previously explained that

> "[t]he law makes no nice or refined distinction as to the manner or method of a flight; it may be open, or it may be a hurried or concealed departure, or it may be a concealment within the jurisdiction."

Whittenmeir, 725 S.W.2d at 688 (quoting Rogers v. State, 455 S.W.2d 182, 187 (Tenn. Crim. App. 1970)). It is proper for the trial court to instruct the jury on flight when the issue has been raised by the proof. See State v. Kendricks, 947 S.W.2d 875, 885-86 (Tenn. Crim. App. 1996).

At trial, the court included the following instruction as to flight in its charge to the jury:

> The flight of a person accused of a crime is a circumstance which, when considered with all the facts of the case, may justify an inference of guilt. Flight is the voluntary withdrawal of oneself for the purpose of evading arrest or prosecution for the crime charged. Whether the evidence presented proves beyond a reasonable doubt that the defendant fled is a question for your determination.
>
> The law makes no precise distinction as to the manner or method of flight; it may be open, or it may be a hurried or concealed departure, or it may be concealment within the jurisdiction. However, it takes both a leaving the scene of the difficulty and a subsequent hiding out, evasion, or concealment in the community, or a leaving of the community for parts unknown, to constitute flight.

- 8 -

If flight is proved, the fact of flight alone does not allow you to find that the defendant is guilty of the crime alleged. However, since flight by a defendant may be caused by a consciousness of guilt, you may consider the fact of flight, if flight is so proven, together with all of the other evidence when you decide the guilt or innocence of the defendant. On the other hand, an entirely innocent person may take flight, and such flight may be explained by proof offered, or by the facts and circumstances of the case.

Whether there was flight by the defendant, the reasons for it, and the weight to be given to it, are questions for you to determine.

See 7 Tenn. Prac. Pattern Jury Instr. T.P.I.—Crim. 42.18 (16th ed. 2012).

Upon review, we conclude that there was sufficient evidence to support the jury instruction on flight. Officers Brown and Croce saw the Defendant speeding away from the crime scene in the victim's car. In an apparent effort to evade detection, the Defendant pulled out of the driveway with his headlights off. Although the Defendant's initial attempt to evade arrest was unsuccessful, the trial court later released the Defendant on bond, ordering that the Defendant comply with electronic monitoring before trial. Mr. Cranmore testified that the Defendant stopped charging his GPS monitor, left his reported residence, and avoided attempts made to contact him. When he was finally taken into custody by Sergeant Brillinger approximately five months later, the Defendant was on an Indian reservation in Bryson City, North Carolina. The Defendant's conduct clearly supported an inference that he was attempting to evade prosecution. Accordingly, the trial court properly instructed the jury on flight.

The Defendant argues that because there were two years between his initial arrest and his release on bond, the trial court should not have considered the Defendant's subsequent hiding out and evading of authorities after his release in determining whether to charge the jury as to flight. However, the Defendant has provided no authority to support this contention. Moreover, as noted by the State, this court has previously held that "[a]ny ex post facto indication by an accused of a desire to evade prosecution may be shown as one of the series of circumstances from which guilt may be inferred." State v. Williams, 638 S.W.2d 417, 421 (Tenn. Crim. App. 1982). No requirement exists that the hiding out or concealment take place immediately following the commission of the offense or that it be without interruption.

Finally, even if the instruction on flight should not have been given, any error is not grounds for reversal. See State v. Smith, 893 S.W.2d 908, 918 (Tenn. 1994). The trial court instructed the jury that whether the defendant fled was a question for its

determination and that flight alone was not sufficient to find the defendant guilty. This instruction, along with the overwhelming proof of the Defendant's guilt, renders any error in giving the flight instruction harmless. See id.; State v. Willie Hall, No. W2008-01875-CCA-R3-CD, 2010 WL 571790, at *9 (Tenn. Crim. App. Feb. 18, 2010), perm. app. denied (Tenn. Sept. 7, 2010) (determining that, even where proof of the defendant's flight was "tenuous," the trial court's decision to give the jury an instruction on flight was harmless in light of the overwhelming evidence of the defendant's guilt). The Defendant is not entitled to relief.

### 2. Evidence of Subsequent Arrest in North Carolina

The Defendant next contends that the trial court abused its discretion by allowing the State to introduce evidence that he violated a condition of his bond. The Defendant asserts that the introduction of such evidence violates Tennessee Rules of Evidence 403 and 404(b). Although the Defendant concedes that he did not request a hearing outside the presence of the jury, he argues that the trial court was nonetheless required to make certain findings under Rule 404(b) before admitting the evidence. The State answers that the Defendant has waived consideration of this claim by failing to raise an objection at trial, and the Defendant cannot establish plain error.

Rule 36(a) of the Tennessee Rules of Appellate Procedure states that "[n]othing in this rule shall be construed as requiring relief be granted to a party responsible for an error or who failed to take whatever action was reasonably available to prevent or nullify the harmful effect of an error." Tenn. R. App. P. 36(a). "The failure to make a contemporaneous objection constitutes waiver of the issue on appeal." State v. Gilley, 297 S.W.3d 739, 762 (Tenn. Crim. App. 2008).

In this case, it appears from the record that the trial court held an off-the-record, in-chambers hearing during which the Defendant raised an objection "to the proof of breaking the bond conditions." However, the record does not indicate the basis for the Defendant's objection, and in his brief, the Defendant acknowledges that he did not request a hearing pursuant to Rule 404(b). Moreover, while the Defendant alleged in his Motion for New Trial that the evidence was improperly admitted, he did not raise a challenge to the admissibility under Rule 403 or Rule 404(b). Accordingly, the issue is waived. See Tenn. R. App. P. 3(e), 36(a). We apply a plain error analysis.

Plain error relief is "limited to errors that had an unfair prejudicial impact which undermined the fundamental fairness of the trial." State v. Adkisson, 899 S.W.2d 626, 642 (Tenn. Crim. App. 1994). In order to be granted relief under plain error relief, five criteria must be met: (1) the record must clearly establish what occurred in the trial court; (2) a clear and unequivocal rule of law must have been breached; (3) a substantial right of

the accused must have been adversely affected; (4) the accused did not waive the issue for tactical reasons; and (5) consideration of the error is "necessary to do substantial justice." Adkisson, 899 S.W.2d at 640-41; see also State v. Smith, 24 S.W.3d 274, 282-83 (Tenn. 2000) (Tennessee Supreme Court formally adopting the Adkisson standard for plain error relief). When it is clear from the record that at least one of the factors cannot be established, this court need not consider the remaining factors. Smith, 24 S.W.3d at 283. The defendant bears the burden of persuasion to show that he is entitled to plain error relief. State v. Bledsoe, 226 S.W.3d 349, 355 (Tenn. 2007).

Here, the trial court admitted evidence of the Defendant's failure to comply with court-ordered electronic monitoring as proof of the Defendant's attempt to evade prosecution. It is well-established that, because flight or attempted flight bears on the intent, purpose, or consciousness of guilt of the defendant, evidence of flight is admissible. See Rogers, 455 S.W.2d at 186. Therefore, the Defendant has failed to demonstrate that a clear and unequivocal rule of law was breached or that one of his substantial rights was adversely affected, and he is not entitled to relief under plain error review. See Smith, 24 S.W.3d at 282-83.

### 3. Backstriking of Potential Jurors

The Defendant also contends that the trial court abused its discretion when it failed to allow the parties to backstrike potential jurors during jury selection and instead limited the use of peremptory challenges to replacement jurors—in direct contravention of Rule 24(d) of the Tennessee Rules of Criminal Procedure. The State responds that the Defendant has waived the issue by failing to make appropriate references to the record in his brief and to provide an adequate record. The State further contends that it appears from the limited record that the trial court allowed the parties to backstrike.

The State correctly notes that the Defendant's brief contains no references to the record in its discussion of the issue, and the Defendant failed to include, in the appellate record, a transcript of the trial court's ruling on the issue of the use of peremptory challenges to backstrike. Tennessee Court of Criminal Appeals Rule 10 provides that "[i]ssues which are not supported by argument, citation to authorities, or appropriate references to the record will be treated as waived in this court." Tenn. Ct. Crim. App. 10(b). Additionally, the appellant bears the burden of preparing an adequate record on appeal, see State v. Ballard, 855 S.W.2d 557, 560 (Tenn. 1993), which includes the duty to "have prepared a transcript of such part of the evidence or proceedings as is necessary to convey a fair, accurate and complete account of what transpired with respect to those issues that are the bases of appeal." Tenn. R. App. P. 24(b). If the appellant fails to file an adequate record, this court must presume the trial court's ruling was correct. See State v. Richardson, 875 S.W.2d 671, 674 (Tenn. Crim. App. 1993). Here, the Defendant

- 11 -

provided no citations to the record when addressing this issue in his brief; however, the record provided by the Defendant is adequate for the court's review. For this reason, we will address the issue on the merits.

"Trial courts enjoy considerable discretion in jury selection to question jurors regarding their qualifications to serve, to conduct individual or group voir dire, and to determine whether jurors should be excused for cause." State v. Frausto, 463 S.W.3d 469, 481 (Tenn. 2015) (citing Tenn. R. Crim. P. 24(b), (c); State v. Sexton, 368 S.W.3d 371, 390-91 (Tenn. 2012)). In reviewing such decisions, appellate courts typically apply an abuse of discretion standard. Id. A trial court abuses its discretion when it "applies incorrect legal standards, reaches an illogical conclusion, bases its ruling on a clearly erroneous assessment of the proof, or applies reasoning that causes an injustice to the complaining party." State v. Phelps, 329 S.W.3d 436, 443 (Tenn. 2010).

Tennessee Rule of Criminal Procedure 24(d) provides:

(d) Exercising Peremptory Challenge. After the court conducts its initial examination and seats a tentative group of jurors not excluded for cause, the following procedure shall be followed until a full jury has been selected from those jurors and accepted by counsel:

(1) At each round of peremptory challenges, counsel shall submit simultaneously to the court either a blank sheet of paper or a sheet of paper challenging one or more jurors in the group of the first twelve (or more if additional jurors are seated under the single entity process of Rule 24(f)(2)(A)) jurors who have been seated. Neither party shall make known the fact that the party has not challenged a juror.

(2) Replacement jurors will be seated in the panel of twelve (or more if additional jurors are seated under the single entity process of Rule 24(f)(2)(A)) in the order of their selection.

(3) If necessary, additional replacement jurors will be examined for cause and, after passed, counsel will again submit simultaneously, and in writing, the name of any juror in the group of twelve (or more if additional jurors are seated under the single entity process of Rule 24(f)(2)(A)) that counsel elects to challenge peremptorily. Peremptory challenges may be directed to any member of the jury; counsel are not limited to using such challenges against replacement jurors.

(4) Alternate jurors are selected in the same manner, unless the single entity process of Rule 24(f)(2)(A) is used.

(5) The trial judge shall keep a list of those challenged. If the same juror is challenged by both parties, each party is charged with the challenge. The trial judge shall not disclose to any juror the identity of the party challenging the juror.

Tenn. R. Crim. P. 24(d) (emphasis added). Thus, under the rule, "[b]ackstriking is allowed." State v. Debiasi Sirnard King and Dewayne King, No. 03C01-9801-CR-00015, 1999 WL 281080, at *3 (Tenn. Crim. App. Apr. 30, 1999), aff'd on other grounds State v. King, 40 S.W.3d 442 (Tenn. 2001).

"Like other procedural rules of general applicability, the Tennessee Rules of Criminal Procedure are laws of this State 'in full force and effect[,]'" and a trial court may not ignore or rewrite the clear mandates of the Tennessee Rules of Criminal Procedure. Frausto, 463 S.W.3d at 482-83 (quoting Tenn. Dep't. of Human Servs. v. Vaughn, 595 S.W.2d 62, 63 (Tenn. 1980)). A trial court's failure to comply with the clear mandates of Rule 24(d) during jury selection is an abuse of discretion. See id. at 483.

In this case, it is not clear from the record that the trial court failed to comply with the requirements of Rule 24(d). Although the record contains a transcript of jury selection, it does not contain the trial court's ruling relating to backstriking, which the trial court evidently made during an "off the record . . . in-chambers discussion." However, at a bench conference before jury selection began, defense counsel objected "to the Court's ruling that back-striking is not permitted." During another bench conference, defense counsel, in response to a question from the prosecutor, stated, "Not back-strike?" While the prosecutor responded, "Correct," the trial court did not respond to the statement. However, the trial court's statements during a third bench conference appear to contradict the Defendant's claim that the court did not permit peremptory challenges to potential jurors who remained following a prior round of challenges. After the removal and replacement of five potential jurors, the prosecutor asked the court whether "strikes" were limited to "all twenty here or just the fourteen or just the new ones." The trial court responded, "Exercise your challenge to the fourteen." Additionally, it appears from the record that at least one potential juror—Juror Adelsgruber—who was dismissed during the second round of peremptory challenges, was part of the original group of fourteen and survived the first round of challenges. Thus, it is not clear whether the trial court prohibited backstriking and limited the parties' use of peremptory challenges to replacement jurors in violation of Rule 24(d).

- 13 -

Even assuming that the trial court abused its discretion by failing to comply with Rule 24(d) during the jury selection, the Defendant has not established that any such failure caused an injustice entitling the Defendant to a new trial. Defendants seeking relief based on deviations from prescribed jury selection procedures must establish prejudice by showing either that the deviations "more probably than not affected the verdict" or that the deviations "prejudiced the judicial process." Id.; see also State v. Lynn, 924 S.W.2d 892, 896 (Tenn. 1996). In this case, it appears that any deviation from Rule 24 was, at most, minor, and there is no proof of a "substantial and flagrant" violation of the rule. Frausto, 463 S.W.3d at 486 (determining that the trial court's deviations from Rule 24 were "substantial and flagrant" and "not minor, technical, inadvertent, or motivated by circumstances beyond the trial court's control[]"). Accordingly, the Defendant has not shown that any deviation from Rule 24 more probably than not affected the verdict or prejudiced the judicial process, and he is not entitled to relief.

### 4. Motion to Reconvene Jury

The Defendant asserts that the trial court erred when it denied his Motion to Reconvene Jury. He contends that the trial court should have reconvened the jury to determine what the "real finding of the jury was" after Juror McGaha submitted an affidavit alleging that she did not vote in favor of convicting the Defendant, which raised a question about the unanimity of the jury's verdict. The State responds that the trial court properly denied the defendant's Motion to Reconvene Jury. We agree with the State.

Once a jury is discharged, it may not reconvene to correct or amend the initial verdict. State v. Green, 995 S.W.2d 591, 612 (Tenn. Crim. App. 1998); see also State v. Nash, 294 S.W.3d 541, 553 (Tenn. 2009); Clark v. State, 97 S.W.2d 644, 646 (Tenn. 1936). The important factors in determining if a jury has been discharged are: (1) the separation from the presence of the trial court and (2) the opportunity for outside contacts or influences. See Green, 995 S.W.2d at 612-13. Here, the trial court discharged the jury after the verdict was announced. The Defendant did not file his Motion to Reconvene Jury until more than one month later, during which time the opportunity for outside contact and influence was great as jurors returned to their daily lives. Accordingly, the trial court properly denied the Defendant's Motion to Reconvene Jury.

In any event, the record reflects that the jury's verdict was unanimous. After the jury foreperson announced the verdict, each of the jurors signified that the announced verdict was his or her own verdict. Evidently satisfied that the jury was unanimous, neither the State nor the Defendant requested that the trial court poll the jury individually. At the hearing on the Defendant's Motion for New Trial, the trial court discredited the

- 14 -

claims made by Juror McGaha in her affidavit, noting that she indicated under oath that the jury's verdict was her own following the announcement of the verdict at trial. The Defendant is not entitled to relief based upon this claim.

### 5. Right to Fair and Impartial Jury

The Defendant next contends that he was denied the right to trial by a fair and impartial jury because a juror willfully concealed or failed to disclose information during voir dire which would reflect on the juror's lack of impartiality. Specifically, the Defendant contends that a juror failed to disclose that he knew Mr. Reed and Ms. Grimmet, and the juror later commented during deliberations that they were not at trial because they were in jail.[4]

Every criminal defendant has a constitutional right to a trial by an impartial jury. U.S. Const. amend. VI; Tenn. Const. art. I, § 9; see also State v. Sexton, 368 S.W.3d 371, 390 (Tenn. 2012). An impartial jury is one in which the jurors are "free of . . . disqualification on account of some bias or partiality toward one side or the other of the litigation." State v. Akins, 867 S.W.2d 350, 354 (Tenn. Crim. App. 1993) (quoting Toombs v. State, 270 S.W.2d 649, 650 (Tenn. 1954)) (internal quotation marks omitted). Voir dire allows for the impaneling of a fair and impartial jury through questions that permit counsel to intelligently exercise challenges. Id. Full knowledge of the facts that might bear upon a juror's qualifications is essential to the intelligent exercise of preemptory and cause challenges. Id. at 355. Jurors, therefore, are obligated to make "full and truthful answers . . . neither falsely stating any fact nor concealing any material matter." Id. (quoting 47 Am. Jur. 2d, Jury § 208 (1969)) (internal quotations marks omitted).

Challenges to juror qualifications generally fall into two categories—*propter defectum* or *propter affectum*. Carruthers v. State, 145 S.W.3d 85, 94 (Tenn. Crim. App. 2003). General disqualifications such as alienage, family relationship, or statutory mandate are classified as *propter defectum* and must be challenged before the return of a jury verdict. Akins, 867 S.W.2d at 355. An objection based upon bias, prejudice, or partiality is classified as *propter affectum* and may be made after the jury verdict is returned. Id.

When a juror willfully conceals or fails to disclose information during voir dire which reflects on the juror's lack of impartiality, a presumption of prejudice arises. Id.

---

[4] Neither Mr. Reed nor Ms. Grimmet testified at trial. In his brief, the Defendant asserts that Mr. Reed and Ms. Grimmet were "both listed as [S]tate[']s witnesses." We note, however, that they were not listed as witnesses on the indictment, and the record contains no other list of witnesses for the State.

(citing Durham v. State, 188 S.W.2d 555, 559 (Tenn. 1945)). The presumption of bias, however, may be dispelled by an absence of actual favor or partiality by the juror. See State v. Taylor, 669, S.W.2d 694, 700 (Tenn. Crim. App. 1983). The defendant bears the burden of proving a prima facie case of bias or partiality. Akins, 867 S.W.2d at 355 (citing Taylor, 669 S.W.2d at 700).

In this case, the Defendant has failed to establish that a juror willfully concealed or failed to disclose information during voir dire tending to indicate a lack of impartiality. At the Motion for New Trial hearing, the Defendant submitted an affidavit from Juror McGaha, which stated, "One of the jurors acknowledged knowing [Mr.] Reed and [Ms. Grimmet]. [The juror] said he knew they were in jail is why they could not be at trial." However, the trial court found Juror McGaha not credible and refused to consider the affidavit, and the Defendant made no other offer of proof at the hearing. We note that the affidavit does not identify the juror who knew Mr. Reed and Ms. Grimmet, and a review of the record shows that, during voir dire, neither the State nor the Defendant asked members of the venire if they knew Mr. Reed or Ms. Grimmet. See id. at 356 (stating that a juror's failure to disclose information in the face of a "material question reasonably calculated to produce the answer" gives rise to the presumption of bias and partiality). The Defendant has failed to prove a prima facie case of bias or partiality on the part of any juror. He is not entitled to relief.

### 6. Sufficiency of the Evidence for Especially Aggravated Robbery

Next, the Defendant contends that the evidence is insufficient to sustain his conviction for especially aggravated robbery because the use of force or violence against the victim did not facilitate his theft of the victim's vehicle. He asserts that there was no temporal link between the violence and the taking and that the vehicle was not taken from the victim's person or in the victim's presence. The State responds that, when viewed in the light most favorable to the State, the evidence is sufficient to support the conviction. We agree with the State.

Our standard of review for a sufficiency of the evidence challenge is "whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Jackson v. Virginia, 443 U.S. 307, 319 (1979) (emphasis in original); see also Tenn. R. App. P. 13(e). Questions of fact, the credibility of witnesses, and weight of the evidence are resolved by the fact finder. State v. Cabbage, 571 S.W.2d 832, 835 (Tenn. 1978), superseded on other grounds by Tenn. R. Crim. P. 33 as stated in State v. Moats, 906 S.W.2d 431, 434 n.1 (Tenn. 1995). This court will not reweigh the evidence. Id. Our standard of review "is the same whether the conviction is based upon direct or

circumstantial evidence." State v. Dorantes, 331 S.W.3d 370, 379 (Tenn. 2011) (quoting State v. Hanson, 279 S.W.3d 265, 275 (Tenn. 2009)) (internal quotation marks omitted).

A guilty verdict removes the presumption of innocence, replacing it with a presumption of guilt. State v. Bland, 958 S.W.2d 651, 659 (Tenn. 1997); State v. Tuggle, 639 S.W.2d 913, 914 (Tenn. 1982). The defendant bears the burden of proving why the evidence was insufficient to support the conviction. Bland, 958 S.W.2d at 659; Tuggle, 639 S.W.2d at 914. On appeal, the "State must be afforded the strongest legitimate view of the evidence and all reasonable inferences that may be drawn therefrom." State v. Vasques, 221 S.W.3d 514, 521 (Tenn. 2007).

"Especially aggravated robbery is robbery . . . [a]ccomplished with a deadly weapon; and . . . [w]here the victim suffers serious bodily injury." Tenn. Code Ann. § 39-13-403(a) (2012). "Robbery is the intentional or knowing theft of property from the person of another by violence or putting the person in fear." Tenn. Code Ann. § 39-13-401(a) (2012). "A person commits theft of property if, with intent to deprive the owner of property, the person knowingly obtains or exercises control over the property without the owner's effective consent." Tenn. Code Ann. § 39-14-103(a) (2012).

In this case, the victim returned home and found the Defendant attempting to take guns and various other items from his residence. The Defendant threatened the victim with a rifle, but the victim was able to disarm and subdue the Defendant. When the victim called 911, the Defendant attacked him with a knife, stabbing the victim repeatedly and then slicing the victim's throat. As the victim attempted to flee the residence, the Defendant followed him. The Defendant stabbed the victim in the back twice as the victim ran through the front door of the residence. The victim went to his mother's house nearby, and moments later, police officers stopped the Defendant, who was driving the victim's car.

On appeal, the Defendant contends that the evidence was insufficient to support his conviction for especially aggravated robbery because there was no temporal link between his use of violence and his taking of the victim's car. The use of violence or fear elevates theft to robbery. State v. Swift, 308 S.W.3d 827, 830 (Tenn. 2010) (citing State v. Bowles, 52 S.W.3d 69, 80 (Tenn. 2001)). "If an individual uses violence or puts another in fear to obtain or exercise control over another's property, he or she has committed a robbery. Therefore, whether a taking is properly characterized as a theft or a robbery is contingent upon whether and when violence or fear is imposed." State v. Owens, 20 S.W.3d 634, 638 (Tenn. 2000). In Owens, our supreme court explained that the use of violence or fear must precede or be contemporaneous with the taking of property from the person to constitute the offense of robbery. Id. at 641. Moreover, to constitute robbery, the theft of property must be the result of the force or fear or must

- 17 -

have been facilitated or made less difficult by the violence. Id. at 638. Here, the evidence establishes that the Defendant's use of violence against the victim immediately preceded his theft of the victim's vehicle. Moreover, the Defendant's use of violence made theft of the car less difficult. The victim fled his home and the area of his vehicle because the Defendant pursued him with a knife and stabbed him repeatedly. Thus, the infliction of serious bodily injury through the use of a deadly weapon was the means by which the Defendant obtained control over the victim's property.

The Defendant also asserts that he did not commit especially aggravated robbery because the vehicle was not taken from the victim's person or in the victim's presence. He points out that the victim's keys were already inside the vehicle, and the victim was unaware that he was taking the vehicle because the victim was running away. Historically, Tennessee courts have held that the "taking from the person" element of robbery "may be satisfied by a showing that the items were taken from the person of the victim or were taken in the victim's presence." State v. Howard, 693 S.W.2d 365, 368 (Tenn. Crim. App. 1985); see also Morgan v. State, 415 S.W.2d 879, 881 (Tenn. 1967); Jones v. State, 383 S.W.2d 20, 24 (Tenn. 1964); State v. Edwards, 868 S.W.2d 682, 699-700 (Tenn. Crim. App. 1993). That is, "the taking from the person may be either actual or constructive. It is actual when the taking is immediately from the person and constructive when in the possession of the victim or in the victim's presence." State v. Miller, 608 S.W.2d 158, 160 (Tenn. Crim. App. 1980).

However, as noted by this court in State v. Nix, the current version of our robbery statute does not require a "taking," and therefore, "an offender can commit a robbery by asserting control over the property without any degree of asportation or physical taking[.]" 922 S.W.2d 894, 900-01 (Tenn. Crim. App. 1995); see Tenn. Code Ann. §§ 39-14-103(a); 39-13-403(a). "In other words, since 1989, if an offender, with the intent to deprive the owner, asserts control over property by means of the owner or possessor being removed from the presence of the property by force or fear, the offense of robbery is committed to the same degree that it is if the offender carries the property away from the victim's presence." Nix, 922 S.W.2d at 901.

When viewed in the light most favorable to the State, the proof established that the Defendant obtained possession of the victim's car only by separating the victim from his car by the use of violence. See e.g., State v. Samuel Poole, No. 03C01-9802-CR-00060, 1998 WL 784252, at *3-4 (Tenn. Crim. App. Nov. 5, 1998), perm. app. denied (Tenn. Apr. 5, 1999) (affirming the defendant's conviction for aggravated robbery where the jury could have concluded from the proof that the defendant obtained possession of the victim's automobile by separating the victim from his vehicle by the exercise of force or fear). Here, the jury could reasonably conclude that the victim actively resisted the Defendant's efforts to take his property prior to the Defendant's use of force and that the

- 18 -

theft of the victim's car was facilitated or made less difficult by the Defendant's infliction of serious bodily injury upon the victim. Under these circumstances, the jury was entitled to find the Defendant guilty of especially aggravated robbery. The Defendant is not entitled to relief.

### 7. Further Jury Deliberations

The Defendant also contends that the trial court erred in failing to require the jury to deliberate further after it returned an "incorrect verdict" by finding the Defendant guilty of both especially aggravated robbery and the lesser included offense of theft of property. He asserts that the trial court had a duty to send the jury back to deliberate and correct its error instead of simply merging the convictions at the Defendant's subsequent sentencing hearing. The State replies that the jury did not return an incorrect verdict and that the trial court properly merged the Defendant's convictions for especially aggravated robbery and theft based upon double jeopardy concerns. We agree with the State.

The Defendant is correct that "[w]hen a jury returns an incorrect or imperfect verdict, the trial court has the power and duty to send the jury back to the jury room with directions to amend the verdict and put it in proper form." Gwinn v. State, 595 S.W.2d 832, 835 (Tenn. Crim. App. 1979) (citing Meade v. State, 530 S.W.2d 784, 787 (Tenn. Crim. App. 1975)). However, the jury in this case found the Defendant guilty of especially aggravated robbery and theft over $1,000, which were charged as two separate counts of the indictment. The jury did not return multiple verdicts on one count, as alleged by the Defendant. Thus, there was no imperfection in the verdict for the jury to correct. Cf. State v. Ezra Shawn Ervin and Andrew McKinney, No. E1999-00287-CCA-R3-CD, 2001 WL 15832, at *4 (Tenn. Crim. App. Jan. 9, 2001) (determining that the trial court properly caused the jury to deliberate further after the jury returned improper verdicts finding the defendants guilty of multiple offenses based upon a single-count indictment), perm. app. denied (Tenn. June 4, 2001). Because the jury did not return an incorrect or imperfect verdict, the trial court had no duty to require the jury to correct or amend its verdict.

Moreover, the trial court properly merged the Defendant's convictions for especially aggravated robbery and theft over $1,000 based on double jeopardy principles. Theft is a lesser-included offense of especially aggravated robbery. See State v. Bowles, 52 S.W.3d 69, 79 (Tenn. 2001) (holding theft is a lesser-included offense of robbery). Dual convictions for these offenses violate double jeopardy. See State v. Watkins, 362 S.W.3d 530, 557 (Tenn. 2012) (stating that if "one offense is a lesser included of the other, then we will presume that multiple convictions are not intended by the General Assembly and that multiple convictions violate double jeopardy[]"). In this case, after concluding that the especially aggravated robbery and theft convictions both involved the

- 19 -

taking of Mr. Norton's vehicle, the trial court ruled that the "two must merge," and the judgments reflect this merger. "Such a merger and imposition of a single judgment of conviction protects against double jeopardy and preserves the validity of the jury verdicts for future avoidance of problems related to unnecessarily dismissed 'charges' or 'convictions.'" State v. Addison, 973 S.W.2d 260, 267 (Tenn. Crim. App. 1997); see, e.g., State v. Chase Courtland Powell, No. E2009-01301-CCA-R3-CD, 2010 WL 2219620, at *6 (Tenn. Crim. App. June 2, 2010) (holding that principles of double jeopardy barred the defendant's multiple convictions of robbery and theft and remanding for the entry of a corrected judgment reflecting the merger of the theft conviction into the robbery conviction), perm. app. denied (Tenn. Nov. 12, 2010). The Defendant is not entitled to relief.

## 8. Sentencing

The Defendant asserts that the trial court abused its discretion in imposing consecutive sentences, arguing that the trial court incorrectly found that he had an extensive criminal history and that the court failed to make the requisite Wilkerson findings to support the dangerous offender category. Further, the Defendant asserts that his effective sentence of sixty years, eleven months, and twenty-nine days is "grossly disproportionate to other offenders." The State responds that the trial court acted within its discretion when sentencing the Defendant.

### *Consecutive Sentencing*

In determining the proper sentence, the trial court must consider: (1) the evidence, if any, received at the trial and the sentencing hearing; (2) the presentence report; (3) the principles of sentencing and arguments as to sentencing alternatives; (4) the nature and characteristics of the criminal conduct involved; (5) the evidence and information offered by the parties on the mitigating and enhancement factors set out in Tennessee Code Annotated sections 40-35-113 and -114; (6) any statistical information provided by the administrative office of the courts as to sentencing practices for similar offenses in Tennessee; and (7) any statement the defendant made in the defendant's own behalf about sentencing. See Tenn. Code Ann. § 40-35-210; State v. Taylor, 63 S.W.3d 400, 411 (Tenn. Crim. App. 2001). The trial court must also consider the potential or lack of potential for rehabilitation or treatment of the defendant in determining the sentence alternative or length of a term to be imposed. Tenn. Code Ann. § 40-35-103 (2014).

When the record establishes that the trial court imposed a sentence within the appropriate range that reflects a "proper application of the purposes and principles of our Sentencing Act," this court reviews the trial court's sentencing decision under an abuse of discretion standard with a presumption of reasonableness. State v. Bise, 380 S.W.3d 682,

707 (Tenn. 2012). To facilitate meaningful appellate review, the trial court must state on the record the factors it considered and the reasons for imposing the sentence chosen. Tenn. Code Ann. § 40-35-210(e) (2014); Bise, 380 S.W.3d at 706. The party challenging the sentence on appeal bears the burden of establishing that the sentence was improper. Tenn. Code Ann. § 40-35-401 (2014), Sentencing Comm'n Cmts.

In State v. Pollard, the Tennessee Supreme Court expanded its holding in Bise to trial courts' decisions regarding consecutive sentencing. State v. Pollard, 432 S.W.3d 851, 859 (Tenn. 2013). This court must give "deference to the trial court's exercise of its discretionary authority to impose consecutive sentences if it has provided reasons on the record establishing at least one of the seven grounds listed in Tennessee Code Annotated section 40-35-115(b)." Id. at 861. "Any one of [the] grounds [listed in section 40-35-115(b)] is a sufficient basis for the imposition of consecutive sentences." Id. at 862 (citing State v. Dickson, 413 S.W.3d 735 (Tenn. 2013)). However, before a trial court imposes consecutive sentences based on the ground that the defendant is a dangerous offender, see Tenn. Code Ann. § 40-35-115(b)(4), the trial court must also find "that an extended sentence is necessary to protect the public against further criminal conduct by the defendant and that the consecutive sentences must reasonably relate to the severity of the offenses committed." State v. Wilkerson, 905 S.W.2d 933, 939 (Tenn. 1995).

Here, the trial court concluded that the Defendant was an offender whose record of criminal activity was extensive and that he was a dangerous offender whose behavior indicated no regard for human life and no hesitation about committing a crime in which the risk to human life is high. See Tenn. Code Ann. § 40-35-115(b)(2), (4). The trial court also stated that the aggregate sentence "fairly reflect[ed] the severity of the offenses and reasonably relate[d] to the severity of the offenses[.]"

The exhibits introduced by the State at sentencing support the trial court's determination that the Defendant is an offender whose record of criminal activity is extensive. They establish that the Defendant had prior felony convictions from North Carolina for two counts of breaking and entering, two counts of larceny of a motor vehicle, and one count each of larceny, larceny with a firearm, conspiracy to possess a counterfeit instrument, and possession of stolen goods. Additionally, the Defendant was convicted in this case of attempted first degree murder, aggravated burglary, especially aggravated robbery, and possession of a prohibited weapon. See State v. Palmer, 10 S.W.3d 638, 647-49 (Tenn. Crim. App. 1999) (holding that both a defendant's prior offenses and present convictions could be considered when imposing consecutive

sentences under section 40-35-115(b)(2)). Accordingly, we conclude that the trial court was justified in imposing consecutive sentences under section 40-35-115(b)(2).[5]

*Proportionality Challenge*

In evaluating a proportionality challenge under the Tennessee Constitution, the sentence imposed is initially compared with the crime committed, and the sentence will be found constitutional unless the threshold comparison leads to an inference of "gross disproportionality." State v. Harris, 844 S.W.2d 601, 603 (Tenn. 1992). In rare cases where that inference arises, the analysis proceeds by comparing (1) the sentences imposed on other crimes in the same jurisdiction and (2) the sentences imposed for the commission of the same crime in other jurisdictions. Id.

In this case, the Defendant broke into the victim's home armed with a knife and then armed himself further with a loaded rifle and confronted the victim when the victim returned home. The trial court found that the Defendant treated the victim with exceptional cruelty during the commission of the offense by stabbing the victim multiple times—even as the victim attempted to flee—and "pulling his head back [and] cutting his throat." The Defendant sliced so deeply that the knife penetrated the victim's mouth and cut his tongue. The Defendant also stabbed into both the victim's chest and abdominal cavities. The victim lost a significant amount of blood and was placed in a substantial risk of death. The Defendant then stole the victim's car in an attempt to elude law enforcement. At trial, doctors testified that the victim's wounds required extensive medical intervention and that the victim suffered residual muscle damage and numbness. When comparing the Defendant's crimes committed to his effective sixty-one year sentence, no inference of gross disproportionality exists. Moreover, we have reviewed the cases cited by the Defendant, and they provide little support for his contention that his sentence is disproportionate to sentences imposed on other similar crimes in Tennessee. See State v. Cowan, 46 S.W.3d 227, 229 (Tenn. Crim. App. 2000) (fifty-two year sentence affirmed for attempted first degree murder, especially aggravated robbery, and aggravated burglary); State v. Randy Parham, No. W2011-01276-CCA-R3-CD, 2012 WL 4459811, at *4-11 (Tenn. Crim. App. Sept. 26, 2012) (fifty-five year sentence affirmed for attempted first degree murder and aggravated robbery). The Defendant's sentence is constitutional, and he is not entitled to relief.

---

[5] Because only one of the grounds listed in Tennessee Code Annotated section 40-35-115(b) is needed to justify the imposition of consecutive sentences, we need not determine whether the trial court properly found the Defendant to be a dangerous offender. State v. Mickens, 123 S.W.3d 355, 394 (Tenn. Crim. App. 2003) (concluding that the criteria for consecutive sentencing "are stated in the alternative; therefore, only one need exist to support the appropriateness of consecutive sentencing.")

## 9. Jurors' Consideration of the Defendant's Decision Not to Testify

Next, the Defendant contends that, during deliberations, jurors considered his decision not to testify as evidence of his guilt, in violation of his constitutional right to remain silent. He avers that Juror McGaha's affidavit established that the jury considered the Defendant's decision not to testify to his prejudice and that the information provided by Juror McGaha rebutted any presumption that the jury followed the trial court's instruction to place "no significance" on the fact that the Defendant had not taken the stand. The State responds that the Defendant presented "no admissible evidence" to demonstrate that the jury disobeyed the trial court's instructions and considered the Defendant's failure to testify as evidence of guilt.

Tennessee Rule of Evidence 606(b) expressly prohibits, upon an inquiry into the validity of a verdict, a juror's testimony as to "any matter or statement occurring during the course of the jury's deliberations or to the effect of anything upon any juror's mind or emotions as influencing that juror to assent to or dissent from the verdict . . . or concerning the juror's mental processes," except for testimony concerning: (1) extraneous prejudicial information; (2) outside influences; or (3) an agreement to be bound by a quotient verdict. Tenn. R. Evid. 606(b).

The Defendant maintains that Juror McGaha's affidavit related to extraneous prejudicial information and was admissible under Rule 606(b). We disagree. In her affidavit, Juror McGaha stated that "[m]ost of the jurors said that the [D]efendant had to be guilty because he didn't testify. Someone also said that he had something to hide or he would have testified." This statement does not concern extraneous prejudicial information—it concerns "statement[s] occurring during the course of the jury's deliberations" about the "juror[s'] mental processes," the admission of which is specifically prohibited by Rule 606(b). Thus, the affidavit was not admissible evidence. See, e.g., State v. Carter, 714 S.W.2d 241, 249-50 (Tenn. 1986) (determining that a juror's affidavit supporting the defendant's claim that his constitutional right to remain silent had not been honored by the jury was inadmissible under Rule 606(b)). In any event, the trial court discredited the claims in the affidavit based upon Juror McGaha's contradictory assertion at trial that the jury's verdict was her own. For these reasons, the Defendant has failed to establish any claim upon which relief may be granted.

## 10. Cumulative Error

Finally, the Defendant maintains that he is entitled to a new trial based upon cumulative error. The cumulative error doctrine recognizes that there may be many errors committed in trial proceedings, each of which constitutes mere harmless error in isolation, but have a cumulative effect on the proceedings so great as to require reversal

in order to preserve a defendant's right to a fair trial. <u>State v. Hester</u>, 324 S.W.3d 1, 76 (Tenn. 2010). To warrant review under the cumulative error doctrine, however, there must have been more than one actual error during the trial proceedings. <u>Id.</u> at 77. In this case, the Defendant has failed to show that any error occurred at trial. Therefore, the cumulative error doctrine does not apply.

### III. Conclusion

Based upon the foregoing, the judgments of the trial court are affirmed.

_____
ROBERT L. HOLLOWAY, JR., JUDGE